Hillsborough,  
Nov. 3, 1903.

ENGLISH *v.* AMIDON *& a.*

If a stairway which constitutes the only means of exit from a factory is so constructed as to be unsuitable for use by servants at night unless repaired or artificially lighted, it is the duty of the master, in the exercise of ordinary care, to make it reasonably safe, either by providing lights or by remedying the construction; and this duty is one personal to the master, from which he cannot relieve himself by delegating its performance to another.

Whether a servant, who is compelled by the exigencies of the case to use an unlighted and defective stairway as a means of exit from the master's premises, knows and appreciates the danger to which he is thereby exposed, and voluntarily assumes the risk of injury, is a question of fact for the jury.

CASE, for personal injuries. Trial by jury. At the September term, 1902, of the superior court the defendants' motion for a nonsuit was granted by *Peaslee* J., and the plaintiff excepted.

*Shannon & Young*, for the plaintiff.

*Jewell, Owen & Veazey*, for the defendants.

BINGHAM, J. It was the duty of the defendants, in the exercise of reasonable care and diligence, to provide and maintain a safe and suitable stairway by which the plaintiff, as their servant, could go to and from his place of work in the mill. *Fifield* v. *Railroad*, 42 N. H. 225; *Jaques* v. *Company*, 66 N. H. 482; *Fitzgerald* v. *Company*, 155 Mass. 155; *Mahoney* v. *Dore*, 155 Mass. 513. Inasmuch as the defendants operated their mill at night, it is claimed that the stairway should then have been lighted to render it reasonably safe. If the stairway was unsuitable for the use of the defendants' servants at night because its defective construction, taken in conjunction with the darkness, made it dangerous, it might be found to have been the defendants' duty, in the exercise of ordinary care, to make it reasonably safe, either by suitably lighting it or by remedying the construction; and this was a personal duty from which they could not relieve themselves by delegating its performance to another.

The evidence was that the plaintiff and seven other spinners, after finishing their work at nine o'clock in the evening, regularly came down the stairway from the third floor of the mill; that no other way was provided for them; that the stairway was winding, steep, narrow, and worn; that the treads of the stairs varied in width, being narrowest on the inside of the curve; and that the defendants had placed lamps, which were usually lighted at night, over the stairs. On the night in question, when the plaintiff and the other workmen had finished their labors they put out the lights over their machines, as was their custom, and started to go out of the mill. On reaching the stairway they found it was dark, but proceeded to go down and out, the plaintiff going on the outside of the curve, where the treads of the stairs were widest, steadying himself with his hand against the wall, there being no railing on that side of the stairway. When part way down he slipped, fell, and was injured. Reasonable men could conclude from this evidence that the defendants required their servants to use this stairway at night; that its construction, in conjunction with the darkness, rendered its use dangerous; that the defendants themselves so regarded it; that their neglect to make the stairway safe for such use was the proximate cause of the plaintiff's injury; and that, under the circumstances, he was exercising due care in undertaking to use the stairway (the only means provided for leaving the mill) and in his conduct while using it.

Did the plaintiff voluntarily assume the risk of the defendants' negligence? " One does not voluntarily assume a risk, within the meaning of the rule that debars a recovery, when he merely knows there is some danger, without appreciating the danger." *Mundle* v. *Company*, 86 Me. 400, 405; *Demars* v. *Company*, 67 N. H. 404. One cannot be said, as a matter of law, to assume a risk voluntarily, though he knows the danger and appreciates the risk, if at the time he was acting " under such an exigency, or such an urgent call of duty, or such constraint of any kind, as in reference to the danger deprives his act of its voluntary character " (*Mahoney* v. *Dore, supra*); or if, after discovering the master's neglect, he "has no opportunity to leave the service before the injury is received." *Olney* v. *Railroad*, 71 N. H. 427, 431.

When the plaintiff went into the mill it was daylight. He knew that his work would not be finished before nine o'clock that night, and that it was the custom of the defendants to then have the stairway lighted. He had the right to believe they would perform their duty on the night in question, and to rely thereon. He entered the mill, worked until nine o'clock, and then went to the stairway to go out. On reaching it, he found himself surrounded in darkness. Although he then knew the defendants had failed to

perform their duty, yet in view of the fact that he then had no choice open to him, the only exit provided being over the dark stairway, and no opportunity to leave the defendants' service before his injury was received, it cannot be said, as a matter of law, that he voluntarily assumed the risk. It was for the jury to say whether the plaintiff, knowing the defendants' neglect of duty, fully appreciated the danger therefrom and voluntarily encountered it. *Demars* v. *Company, supra; Whitcher* v. *Railroad,* 70 N. H. 242; *Dempsey* v. *Sawyer,* 95 Me. 295; *Mahoney* v. *Dore, supra; Fitzgerald* v. *Company, supra;* 47 L. R. A. 161–201, note.

*Exception sustained.*

CHASE, J., was absent: the others concurred.

After the filing of the foregoing opinion on March 3, 1903, the defendants moved for a rehearing.

*Shannon & Young,* for the plaintiff.

*Jewell, Owen & Veazey* and *Streeter & Hollis,* for the defendants.

WALKER, J. The defendants' motion for a rehearing must be denied. It was their non-delegable duty to provide reasonably safe stairs for use in the night-time; that is, adequate instrumentalities or means for the reasonably safe exit of their men from the factory. If at the time of the accident light was essential to such use,—if the danger incident to the defective stairs could have been obviated by artificial lighting,—the duty to furnish the necessary light, or in some way to guard against the apparent danger, was no more a delegable duty than the duty to maintain stairs of sufficient strength to support the ordinary weight imposed upon them. The rule of ordinary care which requires the master to provide a safe structure for travel from an upper story to the ground might require him to furnish adequate light when the structure becomes unreasonably dangerous for use in the darkness, for the same reason that common prudence might require him to keep a defective underground passage-way lighted in the daytime as well as in the night-time. The principle involved is not derived from exact or ingenious definitions of the words "place," "tools," or "appliances," however convenient and useful they may be in a particular case, but from considerations of the requirements of ordinary and reasonable care on the part of both the employer and the employee. If as a matter of fact a particular course of conduct on the part of

the master toward his servant is unreasonable when measured by the conduct of men in general engaged in similar occupations, he cannot shield himself as a matter of law from the consequences of such conduct by a resort to verbal distinctions, which oftener serve to obscure than to elucidate legal principles. The law seeks to enforce as a duty the requirement of reasonable conduct; hence the rule of ordinary care, which determines the rights and duties of master and servant in negligence cases.

Whether ordinary care for the reasonable safety of their servants, in view of the contract of employment, required the defendants to remedy or remove the danger incident to the use of these stairs in the night-time, by repairing or reconstructing them, or by lighting them, is a question of fact for the jury. This court cannot say upon the evidence reported that fair-minded men in the discharge of their duty as jurors, after having viewed the premises and heard the evidence, could not reasonably find that the defendants omitted to exercise the degree of care which common prudence required.

This case is clearly distinguishable from *McLaine* v. *Company*, 71 N. H. 294; for in that case the danger arose from the act of a fellow-servant in the performance of the work, for which it was held to be unreasonable to hold the master responsible, and not from any defects in the instrumentalities provided by the master, for which he is liable if he does not exercise ordinary care in the premises. *Manning* v. *Manchester Mills*, 70 N. H. 582, is distinguishable for a similar reason. In other cases cited by the defendants (*Mellen* v. *Wilson*, 159 Mass. 88; *Dene* v. *Print Works*, 181 Mass. 560; *Kaare* v. *Company*, 139 N. Y. 369; *New York, etc. R. R.* v. *Perriguey*, 138 Ind. 414; *Collins* v. *Railroad*, 30 Minn. 31), the sole ground upon which negligence was claimed was the absence of light caused by the negligence of a fellow-servant. The existence of light, in those cases, was not required to remedy, or to obviate the danger arising from, structural defects. Lamps for the production of light were regarded as a part of the properly constructed appliances or machines which it was the duty of the servant to operate. The question of their necessity and use to guard against the consequences of the master's negligence in unreasonably maintaining dangerously defective appliances was not considered.

*Motion denied.*

PARSONS, C. J., and REMICK and BINGHAM, JJ., concurred: CHASE, J., doubted.