### NEW ENGLAND NEWSPAPER PUB. CO. v. McNEIGHT.

(Circuit Court of Appeals, First Circuit. November 14, 1913.)

No. 1,040.

1. MASTER AND SERVANT (§ 286*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

Evidence considered, in an action to recover for an injury to an employé working at a folding machine in a pressroom, and *held* insufficient to warrant the court in submitting to the jury, over defendant's objection, the question whether the light by which plaintiff was working was adequate.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 270*)—ACTION FOR INJURY TO SERVANT—EVIDENCE.

Where plaintiff's hand was injured by being caught between rolls in a newspaper folding machine from which he was taking away papers, which machine was defective, and had been for a long time, to defendant's knowledge, in that the rolls did not operate properly and failed to deliver some of the papers making it necessary for plaintiff to remove them with his hands, evidence was admissible in his behalf tending to show that a guard placed before the rolls would have lessened the danger, although there was no evidence that such guards were commonly used on machines not defective.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by Frederick McNeight against the New England Newspaper Publishing Company. Judgment for plaintiff, and defendant brings error. Reversed.

Francis P. Garland, of Boston, Mass., (J. T. Auerbach and H. S. MacPherson, both of Boston, Mass., on the brief), for plaintiff in error.

John L. Hall, of Boston, Mass. (Stuart C. Rand, of Boston, Mass., on the brief), for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

BINGHAM, Circuit Judge. This is an action brought by Frederick McNeight against the New England Newspaper Publishing Company to recover damages for an injury which he sustained by reason of his right hand being drawn between the rolls of a folding machine on a printing press, while in the employment of the defendant. The declaration contains five counts. The fourth and fifth counts were waived by the plaintiff, and the case was submitted to the jury on the remainder. The first count contains a general allegation of negli-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

gence. The second alleges that the negligence consisted in setting the plaintiff at work on a dangerous machine without warning him of its dangers. The third that it consisted in setting him at work on a defective machine. The jury returned a verdict for the plaintiff, and the case is here upon writ of error.

At the time this action arose, Laws of Massachusetts 1911, c. 751, at page 998, provided that, in an action for personal injuries sustained by an employé in the course of his employment, it should not be a defense (1) that the employé was negligent; (2) that the injury was caused by the negligence of a fellow employé; and (3) that the employé had assumed the risk of injury.

The questions presented arise on the defendant's exceptions to the refusal of the court to give a requested instruction to the jury and to the admission of certain testimony.

[1] On the question whether the light provided at the place where the plaintiff was required to work was adequate, the defendant requested the court to charge the jury that they would not be justified upon the evidence, in finding that the light was inadequate. This the court declined to do, but charged the jury as follows:

"Again, take the question of light. The master is bound to have the premises sufficiently lighted for the help employed there to do their work. Were these premises so lighted? Taking the business that was going on, taking the situation in which McNeight was set to work, was he set to work in a place improperly and insufficiently lighted; that is, that a reasonable man would have said was insufficiently and improperly lighted?"

It is thus seen that one of the grounds of negligence upon which the plaintiff was allowed to go to the jury was whether the light was inadequate. There was a general verdict for the plaintiff. From this it follows that the jury may have found that the light was inadequate, and that it was the sole cause, or one of the contributing causes, of the accident. The question, therefore, raised by the defendant's exception is whether there was evidence from which reasonable men might fairly conclude that the defendant did not exercise the care of the average man in providing light at the place where he set the plaintiff at work, and that this was the sole cause, or a contributing cause, of his injury.

The plaintiff was injured while doing the work of a pressman at one of the folders of a large three-decker Hoe newspaper printing press. The folder consisted of a large roll, designated on the sketch as the female roll $B$, which was about $14\frac{1}{2}$ inches in diameter; the cutting-roll $C$, about 7 inches in diameter, and situated at the right of and close to roll $B$; and two nipping-rolls $G$ and $G'$ each about $3\frac{1}{2}$ inches in diameter and about 3 feet long, situated directly below roll $B$. The nipping-rolls were about one-sixteenth of an inch apart, they revolved inwardly, and were located about one-fourth of an inch below roll $B$. One of these rolls was a fixed roll; the other was movable. It rode in a box held in position by springs, and had a play of three-eighths to one-half an inch. Inside of roll $B$ are two folding-blades $D$ and $D'$, located diametrically opposite to each other, and at points equidistant from $E$ and $E'$. The paper comes down from overhead in

a triangular chute, which folds it so that as it comes between rolls $B$ and $C$ it is parallel with the main axis. When the end of the paper is at point $E$ on roll $B$, opposite roll $C$, a pin in roll $B$ attaches itself to the paper, and carries it under roll $B$ and between it and rolls $G$ and $G'$ to $E'$; then a knife in roll $C$ cuts off the paper at $E$, and the paper is released from the pin at $E'$. Simultaneously with this the folding-blade $D$ thrusts the sheet between the nipping-rolls $G$ and $G'$, which fold and feed the paper into the fly $H$, from which it is dropped upon the carrier tape $J$. The distance from the floor to the top of roll $B$ is about 4 feet 5¾ inches, and from the floor to the top of rolls $G$ and $G'$ about 3 feet 3 inches, and from the floor to the point $E$ about 3 feet 10½ inches.

It appeared that the nipping-rolls when on slow speed would not perform their function, and every third or fourth paper would not catch between the rolls and pass down as it should. On this account it was necessary to remove the paper, so as not to clog the nipping-rolls, and to allow the machine to operate. This failure was due to a faulty construction or adjustment of the machine. The plaintiff was set at work on the right side of the machine, as indicated in the sketch, and faced into the machine. His work required him to stand in a stooping posture, "steadily and continuously reaching down at arm's length to the tape to pick up the papers" and pack them together on a table, from which another operator took them away. When the papers did not come through the nipping-rolls he had to reach in above the rolls and remove them, so they would not clog the machine. When the machine was at high speed the papers came out at the rate of 20,000 an hour, and at slow speed at the rate of 500 per hour. The plaintiff picked up 50 papers at a time, and was required to work quite rapidly. There was a foot board 2½ to 3 feet wide immediately over his head where he worked. The press was about 20 feet high. He testified that as he stood bending down "he did not have a full view of the nipping-rolls, but saw only the lowest part of the one nearest him; that as he stood * * * he could not see the space between the two nipping-rolls;" that he had never been warned or instructed as to the danger of getting his hands too close to the nipping-rolls, and did not realize that there was any likelihood of the papers coming down and pulling his hand in. He had, however, had 10 years' experience as a pressman, and at various times for a period of nearly two months, prior to the accident, had worked on the press in question.

On the morning of the accident the press started up on the slow speed; the plaintiff took his place on the packer; and the nipping-rolls failed to draw all the papers through. When this occurred he reached in and pulled the papers out, as he had been instructed to do. After working about ten or fifteen minutes, a paper which failed to pass through the rolls turned in at the corner, and, as he tried to pull it out, another paper came down and pulled it with his right hand into the nipping-rolls. While in the act of reaching for the paper his foot slipped on the oily floor, he was thrown forward, and his hand was taken with the paper into the nipping-rolls.

On the question of light the plaintiff testified that there was an arc. light on the opposite side of the press from where he worked, and that the footboard over his head was between him and this light; that he did not see three arc lights on his side of the machine, but would not say they were not there. In answer to a question as to whether he made any claim as to the light, he said, "The light would go," but "could be improved on"; that there were three lights on his side of the machine; that he did not say there were "three arc lights"; and, although he testified that he did not notice the situation of the light, he later acknowledged there was one inside of the machine, right near these very rolls where he worked; then, still later, he said he "could not state; he would not be sure a light was there;" "there may be a place for one, but * * * [he] would not say it was there;" "that it was the fault of the paper and his foot slipping together that pulled his hand in;" that the press "was running on low speed" when he was injured.

In behalf of the defendant, a witness testified that there was an arc light within six feet of the plaintiff's head, directly above where he was working, and a light inside of the frame of the press, both of which were lighted the morning of the accident. Another witness testified that on the plaintiff's side of the machine there were three big arc lights and several incandescent lights on the frame of the press, 5 or 6 feet up from the floor, and one over the folder. Several of the witnesses said they considered the pressroom well lighted; that there was sufficient to read a paper by; and that there was plenty of light to enable one to do the work.

It would seem from the testimony that the plaintiff at the trial placed little, if any, reliance upon the question of the sufficiency of the light, and that on the whole he regarded it as sufficient. In fact, from his testimony it appears that the light had nothing to do with his accident. His complaint that he did not have a full view of the nipping-rolls was not for want of light but because of the stooping position which he had to take in the performance of his work. It is apparent that, bending down, as he says he was "steadily and continuously" required to do in picking up the papers, it was impossible for him to see where the nipping-rolls came together when the paper was forced into them by the folding-blade, and that all he could see was the lowest part of the roll nearest him, and not the space between the two nipping-rolls. Further than this, he does not attribute his accident to the want of light but to the fact that when he reached up to remove a paper from the nipping-rolls another paper was thrust down by the folding-blade, and that, between this and losing his balance by slipping upon the floor, his hand was thrust and drawn into the nipping-rolls.

It does not seem to us that on the record in this case reasonable men could fairly conclude that the light was inadequate, or that the want of it was the cause, or a contributing cause, of his injury.

[2] As the case must go back for another trial, it becomes necessary to consider the questions raised by the exceptions to evidence. On the question of the defendant's negligence the plaintiff was allowed to introduce evidence tending to show that if a guard had been placed

in the vicinity of the nipping-rolls, where the plaintiff was required to remove papers when they failed to pass through the folder, it would have lessened the danger of his getting his hand into the rolls, and that it was practicable to do this and operate the folder in the way the defendant was doing. The defendant excepted to this evidence, supposedly for the reason it did not disclose that a guard was in common use at this place on such machines. Conceding that it could not be found that guards were generally used near the nipping-rolls on Hoe machines, it does not follow in this case where the defendant's machine, though procured from a reputable maker, was out of order and failed to perform its function, and this condition had existed to the defendant's knowledge for a long time, that such evidence would not be admissible to show the defendant's want of care. Men in general do not employ defective machines in the conduct of their business and subject their employés to additional dangers which they would not be required to encounter if the machines were in such condition as to properly perform their work. It was therefore the defendant's duty to remedy the defect so that the machine would perform its function, and thus obviate the necessity of the plaintiff's encountering this added peril, or, if he chose not to so, to provide such reasonable protection in the way of safeguards as was necessary for the plaintiff's safety. English v. Amidon, 72 N. H. 301, 303, 56 Atl. 548. The evidence under consideration tended to elucidate the subject and, under the circumstance presented by this case was competent.

In the course of the trial the plaintiff testified that the day before the accident he saw oil on the floor beside the folder, and that he "considered it a dangerous place for oil." On cross-examination he was asked if he notified anybody about it at that time, and replied that he did not. The apparent purpose of this inquiry was to enable the defendant to argue that the reason the plaintiff did not notify the defendant was because there was no oil there. On redirect examination he was asked why he did not complain about the oil, and was allowed to answer, subject to defendant's exception, that he wanted to hold his job. Whether he refrained from notifying the defendant for the reason that he did not care to take the chance of losing his employment rather than because there was no oil on the floor was legitimate matter of inquiry, in view of the fact that the defendant had opened up the subject.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court for further proceedings in accordance with this opinion; and the plaintiff in error recovers its costs of appeal.