Hillsborough, }
June 28, 1923. }

### EVA DERVIN v. AMOSKEAG MANUFACTURING CO.

It is the non-delegable duty of the master to use reasonable care to provide and maintain a safe and suitable stairway for the necessary ingress and egress of his servants thereon.

Certain evidence held sufficient to warrant the finding that a master negligently permitted the use of a stairway for a waste-chute without precautions for the safety of employees using the same for ingress to their work.

In such case, the defendant's foreman having testified that an elevator had formerly been used for removing the waste, may properly state on cross-examination that "the defendant still usually did such work by means of elevators and that so far as he knew the use of this stairway for such a purpose was the only exception."

In such case, the defendant's system of guarding the stairway being in issue, the details of the system are relevant.

A charge embodying the historical development of the common-law principles of the liability of the master for injuries to his servant, though of doubtful assistance to the jury, was held to be neither erroneous nor prejudicial.

CASE, for negligence.    Trial by jury and verdict for the plaintiff. Transferred by *Branch*, J., upon the defendant's exceptions to the admission of evidence, to the denial of its motions for a nonsuit and for a directed verdict, to certain parts of the charge and to the refusal of the court to give certain requested instructions.

The plaintiff, an employee of the defendant, was injured while ascending a stairway in the defendant's mill on her way to work, a few minutes before one o'clock, P.M., by being struck on the head by a bag or bale of waste cotton thrown down the stairway by another employee of the defendant in the course of his employment.

The stairway opened off from an entry-way near a street door, and was regularly used by the employees in passing to and from their work, and had been so used by the plaintiff for eight years. For a period of more than six years, the stairway had also been used after one o'clock daily, except Saturdays, as often as there was occasion, for the removal of bags of waste in the manner in which it was being used at the time of the accident. These bags, weighing from one hundred to one hundred and sixty-five pounds, were brought upon trucks to the head of the stairway and tipped or thrown down the stairs by one operative and received at the foot by another. This use of the stairway, usually beginning at two minutes past one o'clock, occupied from a half to three quarters of an hour. The plaintiff had nearly always returned to her work by one o'clock, and had never known of the use of the stairway for the removal of waste. There were two right-angled turns in the stairway, one three or four steps from either landing, so that a person standing at, or approaching from, either end could not see or be seen by one similarly situated at the other end. The operatives removing the waste were one Poirier, who had had the immediate charge of that work for about six years, and one Daneault, who had been his helper for two or three months. It was their custom each to occupy the position at the foot of the stairs alternate weeks, Poirier holding that place and Daneault the position at the head of the stairs the week of the accident. The plaintiff's case was based upon her own testimony and that of these two operatives whom she called as her witnesses.

According to the testimony of the two operatives, they entered the mill together on the day of the accident, separating at the foot of the stairs, Daneault going upstairs and Poirier going into the weave-room, ten feet away, to take off his coat, returning immediately to the foot of the stairs. Before he reached the stairs, however, Daneault had thrown down the bag which hit the plaintiff. Poirier, who had no watch, says it was about one o'clock, while Daneault says that it was one by his watch before they separated at the foot of the stairs. It is conceded, however, that the accident occurred before one o'clock, but after the machinery had started, which usually occurred at five minutes before one. Poirier says Daneault threw the bag down "too quick" without awaiting his return to the foot of the stairs or making sure that he was there. Daneault says that he relied upon his supposition that Poirier would remain where he left him at the foot of the stairs, upon the fact that it was past one o'clock by his watch, and also upon the gesture

of a stranger coming up the stairs who shook his head in response to his inquiry in French if anybody was coming.

Defendant's evidence, doubtfully supported by the testimony of the plaintiff's witnesses, Poirier and Daneault, was that under their instructions and practice these operatives, before beginning the work of putting the bags down, were required to wait until after one o'clock and to make certain that one of them was at the foot of the stairway to keep people from going up.

No other notice or warning was promulgated or given to employees using the stairway. No means of communication or system of signals between the operatives was provided by the defendant. There was evidence that the noise of the machinery made it difficult to hear; that a system of communication by bells and lights could have been installed at little expense; that the door at the entry-way near the foot of the stairs could have been readily closed and fastened during the work.

*Doyle & Doyle (Mr. Paul J. Doyle* orally), for the plaintiff.

*Warren, Howe & Wilson* and *Louis A. Thorp (Mr. Howe* orally), for the defendant.

SNOW, J. The defendant had accepted the employers' liability act, Laws 1911, *c.* 163, and the action is at common law. The defendant concedes that the plaintiff was without fault, but contends that it conclusively appears from the plaintiff's evidence that the accident was due solely to the negligence of her fellow-servants. This position is predicated upon the claim that during the temporary use of the stairway for the removal of waste, it had performed the master's full duty by providing by rule for adequate protection against danger, and that the plaintiff's failure to receive notice and her resulting injury were due to the non-observance of such rules by her fellow-servants, for which it is not responsible. More specifically, it is the defendant's position that the instructions to the operatives, together with the practice that had grown up under them, amounted to a rule prescribed by the defendant that the work of moving the bags should never begin until one o'clock and should never proceed unless there was a guard at the bottom of the stairs. It claims that the fault was that of Daneault in commencing the work too early or in failing first to ascertain that his partner was at the foot of the stairs, or else it was that of Poirier in not

being at his post and keeping the plaintiff off the stairs; that in either case, the sole cause of the plaintiff's injury was the negligence of one or both of these operatives in their common employment with the plaintiff.

If this were a case where the master could divest himself of responsibility by delegating the performance of the act of warning to another through the establishment of a rule or method of operation (*McLaine* v. *Company*, 71 N. H. 294, 297; *Hill* v. *Railroad*, 72 N. H. 518, 520; *Smith* v. *Railroad*, 73 N. H. 325, 327; *Deshaies* v. *Company*, 80 N. H. 351, 353; see *Parmaleau* v. *Company*, 75 N. H. 69), the defendant's motions for a nonsuit and a directed verdict must nevertheless have been denied, since there is evidence upon which there might have been a difference of opinion as to whether the rule adopted provided for a reasonably safe method of operation. The test to determine this question is to be found in answer to the inquiry whether the rule, as promulgated or customarily practiced, was such a rule as the ordinarily prudent man would have adopted. The presumption that all necessary rules were prescribed (*Hill* v. *Railroad*, 72 N. H. 518, 519; *Manning* v. *Manchester Mills*, 70 N. H. 582, 583; *Smith* v. *Railroad*, 73 N. H. 325, 327), does not apply here, since the evidence purports to disclose all the rules in force. Reasonable men might have found from the evidence that the exercise of ordinary care under the circumstances (1) would have required a rule that the operative engaged in throwing down the bags, as an added precaution before beginning the work, should close and fasten the entry door through which the plaintiff and others customarily approached the stairway, or (2) would have called for the installation of a more dependable means of communication between the operatives by means of bells and lights and a rule regulating their use. Reasonable men might have concluded that in putting a winding stairway, ostensibly designed solely for human travel, to a dangerous use like the transmission of freight by the force of gravity, the ordinary man would have promulgated a notice to all operatives habitually using the stairway of the fact that the stairway would be subject to the dangerous use from one to two o'clock each day except Saturdays. Neither the fact that no one had been hurt before nor the fact that the best devised means might sometimes fail to protect, is an answer to the conclusion that reasonable men might find from the evidence that the ordinarily prudent man would have promulgated the notice or provided by rule for the closing of the door or for the use of appropriate signals. There was evidence from which it could be found

that the accident would not have happened but for the defendant's failure in one or more of these particulars. Whether such failure was a proximate cause of the plaintiff's injury was a question of fact for the jury. *Hamel* v. *Company*, 73 N. H. 386, 389; *Vaisbord* v. *Company*, 74 N. H. 470, 474; *Ela* v. *Company*, 71 N. H. 1, 3.

However, the duty which was imposed upon Poirier and Daneault to guard the crooked stairway during the extraordinary and dangerous use to which it was being put at the time of the accident was not a servant's duty, merely incidental to moving the bags, but was a part of the non-delegable duty of the master to furnish a safe instrumentality for the passage of its servants to and from their work. The confusion, if any, arises from failing clearly to distinguish between the nature of the concurrent acts of moving the bags and guarding the stairway. "A servant of whatever rank, charged with the performance of the master's duty towards his servants, is, as to the discharge of that duty, a vice-principal, for whose acts and neglects the master is responsible, because he has invested him with the responsibility of doing that which the master is bound to have carefully performed." *Jaques* v. *Company*, 66 N. H. 482, 484, 485; *Olney* v. *Railroad*, 71 N. H. 427, 430. "The test whether the individual employees concerned were fellow-servants is not found in the fact that they were engaged in a common employment under the same general control and paid by the same principal, but is whether the negligent servant, in the act or omission complained of, represented the master in the performance of any duty owed by the master to the servant injured. The responsibility of the master is determined by the nature of the act in question, and not by a difference in rank or grade of service between particular servants." *McLaine* v. *Company*, *supra*, 294, 295. "The responsibility of the master is not determined by a difference in rank between the servant injured and the one in fault, or by the fact that the servant guilty of negligence is foreman or in control of others, but upon the nature of the act complained of; whether it is an act of service, or an attempted performance of a non-delegable duty of the master. *Wallace* v. *Railroad*, 72 N. H. 504; *Galvin* v. *Pierce*, 72 N. H. 79; *McLaine* v. *Company*, 71 N. H. 294. The principle involved in determining whether the act in question is one of service or mastership is not 'derived from exact or ingenious definitions of the words "place," "tools," or "appliances," however convenient and useful they may be in a particular case, but from considerations of the requirements of ordinary and reasonable care on the part of both the employer

and the employee. If as a matter of fact a particular course of conduct on the part of the master toward his servant is unreasonable when measured by the conduct of men in general engaged in similar occupations, he cannot shield himself as a matter of law from the consequences of such conduct by a resort to verbal distinctions, which oftener serve to obscure than to elucidate legal principles.'" *Hilton* v. *Railroad*, 73 N. H. 116, 119. "The question is one as to the character of the order or act, whether it is one which is given or performed as an order or act of the master in his character as such, or only as an order or act delegated by the master to another and performed by such other as an employee." *Galvin* v. *Pierce, supra,* 83.

It was the non-delegable duty of the defendant in the exercise of reasonable care and diligence to provide and maintain a safe and suitable stairway by which the plaintiff as its servant could go to and from her place of work in the mill. *English* v. *Amidon,* 72 N. H. 301, 303. The stairway appears to have been designed solely for the passage of persons. To transform it into a freight-chute was to put it to a use inconsistent with its ostensible design and manifestly dangerous to anyone attempting to use it for passage at the same time. It could be found that the contour of the stairway rendered such inconsistent use a concealed danger to one ascending the stairs without notice. If so found, the defendant had no more right, without adequate notice to the plaintiff, temporarily to put the stairway to such a dangerous use than it had to remove it without notice. If it did either, it owed the plaintiff the non-delegable duty to guard the entrance during such use, or such absence of, the stairway. Such duty was personal to the master. It was as much the master's duty to keep the stairway, while in use for passage by its servants, free from the flying bags of waste, the approach of which was concealed to them by the contour of the stairway, as it was to keep a defective stairway free from darkness. *English* v. *Amidon, supra,* 301. The transmission of the bags was the duty of the servant; the guarding of the stairway against the concealed danger in order to maintain its safety as an instrumentality was the duty of the master. Poirier and Daneault, in guarding the stairway, were therefore entrusted with the master's duty, and their negligence in its performance was the master's negligence. Their negligence is admitted. The defendant's motions for a nonsuit and a directed verdict were properly denied.

Defendant's foreman and witness had testified that the bags had formerly been taken out upon an elevator, and explained why the

system of taking the bags down by the stairway had been substituted. Upon cross-examination, he was permitted to state, subject to the defendant's exceptions, that the defendant still usually did such work by means of elevators and that so far as he knew the use of this stairway for such purpose was the only exception. The inquiry was within the legitimate latitude of cross-examination.

Upon cross-examination by defendant's counsel, Poirier, the plaintiff's witness, had testified that if any employee desiring to ascend the stairs came in after one o'clock, he would tell Daneault not to send any bags down. Upon redirect examination by the plaintiff's counsel, the witness, subject to the defendant's exception, was permitted to state that in such cases, he would sometimes have the employee wait until all the bags were down and sometimes let him go up, first telling Daneault not to send down any bags. The defendant's system of guarding the stairway was an issue. The evidence was admissible both as explaining a detail of the system and as correcting a partial or erroneous statement brought out by the defendant's counsel.

The defendant excepted to language of the charge used in the course of an historical statement of the development of common-law principles, namely, "Respondeat superior . . . means that the superior or the employer must be responsible for the acts of his agents, and that is a principle which lies at the basis of the plaintiff's case here." This expression was preceded by the statement that the rule was a qualification of the fundamental principle of the common law that every man is responsible for his own but not for another's conduct, and was followed by the further statement that the application of the rule respondeat superior had been later limited by the establishment of the fellow-servant doctrine which the court proceeded to state and explain. While statements of the evolution of this doctrine from the primitive common law may not have been very helpful to the jury, the statement appears to be neither erroneous nor prejudicial.

The defendant's exceptions to the denial of requested instructions, so far as not given, and its further exceptions to the charge, appear to be disposed of by the conclusions hereinbefore reached. The remaining exceptions seem not to be insisted upon.

*Exceptions overruled.*

Peaslee, J., did not sit: the others concurred.