Rockingham,
No. 5863.

ROYCE MURRAY

*v.*

THE BULLARD COMPANY

April 30, 1970.

*McLane, Carleton, Graf, Greene & Brown* and *James R. Muir-head* ( *Mr. John A. Graf* orally ), for the plaintiff.

*Wadleigh, Langdell, Starr, Peters & Dunn* and *Alan Hall* ( *Mr. Charles J. Dunn* and *Mr. Hall* orally ), for the defendant.

DUNCAN, J. This is an action brought to recover damages for personal injuries suffered by the plaintiff at Nashua on September

5, 1962, as the result of an explosion in a machine manufactured by the defendant, while the plaintiff was operating an adjoining machine in the course of his employment by Improved Machinery Company. There was a trial by jury with a view, and a verdict was returned for the plaintiff.

In the course of the trial the defendant excepted to the denial of its motions for a nonsuit and a directed verdict, to certain instructions to the jury, to the denial of certain of its requests for instructions and to other rulings by the trial court. The questions of law presented by the defendant's exceptions were reserved and transferred by the Presiding Justice ( *Loughlin,* J. ).

The machine in which the explosion occurred was a twenty-five ton, ninety-eight thousand dollar, vertical turret lathe which the plaintiff's employer purchased from the defendant in 1958, after consultation with representatives of the defendant concerning the features of the machine. Following purchase the machine was in constant use for three shifts a day up to the day of the accident. During this period it operated satisfactorily and received little attention from the purchaser, except for cleaning the motor, and the periodic addition of lubricating oil.

The plaintiff was the operator of a sizable radial drill located behind and a little to one side of the lathe in question. At approximately 10 P. M. the operator of the lathe had removed a completed piece of work from the machine table and was engaged in removing a fixture which had held the work in place, when he encountered difficulty in operating the table properly and sought assistance from his superiors. While they were engaged in checking the machine, smoke began to appear at the top of the machine, and the electrical power was shut off. The superintendent left and at about the same time the plaintiff moved to a position near the machine to procure a piece of equipment to clean his own machine. As he did so the explosion occurred, which blew the covers from the top and one side of the lathe, and scattered debris and flaming oil about the room. The plaintiff's hair and clothing were ignited, causing serious burns.

Following extinguishment of the fire, the machine was dismantled by removal of the headstock unit which was trucked to the defendant's factory for repairs. No evidence was discovered of any oil, lubricating, hydraulic, electrical, or solenoid failure. Bearings on the drive shaft were found to be missing and "ground up," and there was damage to the primary shaft and the clutch gear

plates. Operation of the table was controlled by means of a friction drive clutch, and the clutch members were distorted by heat, and wedged or fused into the outer ring gear. An expert called by the plaintiff was of the opinion that the explosion resulted from "catastrophic bearing failure" which caused misalignment of the primary shaft and consequent "cocking" of the clutch plates. This produced sufficient heat through friction to weld the plates together and to vaporize the lubricating oil which produced the explosion. It was his opinion that the machine was defective in design because of lack of any device to warn of excessive heat and because without a suitable heat exchanger or ventilating system to discharge the heat.

Witnesses for the defendant attributed the explosion to faulty clutch adjustment, which the defendant contended was the responsibility of Improved Machinery Company. There was evidence that the defendant's manual recommended that the clutch adjustment be checked monthly, but that this was never done. There was also evidence that the defendant's service representative, who visited the plant periodically, had advised the shop superintendent "on many occasions, if the table is starting up and stopping properly, leave the clutch and brake alone, do not touch them."

The plaintiff's claims of negligence in the design and manufacture of the machine, breach of a warranty of fitness for a particular purpose, and sale of a defective machine which was unreasonably dangerous to users and persons to be expected in proximity to it, were submitted to the jury under instructions to many of which the defendant seasonably excepted.

Pursuant to a request by the plaintiff, the court instructed the jury that it should find for the plaintiff on his warranty claim if it found that the machine was not fit for the particular purpose for which it was sold "due to its faulty design or manufacture." The defendant contends that this instruction was erroneous for three reasons: first, that there was no claim of negligent manufacture; second, that the instruction failed to take into account the issue of causation and the defendant's claim that the negligence of the employer was an intervening cause of the injury; and third, that there was no privity between the defendant and the plaintiff and no evidence that the plaintiff had relied upon the seller's judgment that the machine was fit for the purpose for which it was sold. RSA (1955) 346:15 (I) (Uniform Sales Act).

We find no merit in the first of these three contentions. The

jury must have understood that the reference to "faulty design or manufacture" used the terms synonymously to describe the plaintiff's claim that the machine was defective because of a lack of adequate protective devices to prevent or warn of a dangerous excess of heat. Since this rather than negligence in the process of construction was the plaintiff's central claim, we see no likelihood that the jury was misled by the instruction given. The argument that there was no evidence of negligence in manufacture cannot be accepted.

Instructions upon implied warranty and the duty to use "reasonable care in the planning and design of . . . the lathe in question" were closely followed by the statement that "subsequently I am going to go into what we call an intervening cause." The court did shortly instruct the jury as follows in accordance with the defendant's seventh request: "If you find that the plaintiff's injuries were solely due to an independent intervening cause, namely, the failure of Royce Murray's employer . . . to properly keep the clutch of the verticle turret lathe . . . in proper adjustment, which the defendant, The Bullard Company, could not reasonably be found to have the duty to foresee, and that this failure was the proximate cause of the injuries, then you must bring back a verdict for the defendant." The instruction thus given was not confined to the issue of defendant's negligence but extended to the plaintiff's claim in its entirety. Hence we cannot accept the second ground of the defendant's argument: that the charge as to the issue of intervening cause was fatally defective.

The third ground advanced, that the plaintiff was not the purchaser of the machine, and so was not in direct privity of contract with the defendant is not in dispute. The effective statute at the time of the sale was the Uniform Sales Act ( RSA 1955 ch. 346 ), and the Uniform Commercial Code ( RSA 1961 ch. 382-A ) became effective July 1, 1961, before the accident occurred. The effect of the latter statute, and more particularly of decisional law since that time, has been to greatly extend the responsibility of manufacturers and sellers not only in the field of strict liability but in the field of warranty as well.

*Smith* v. *Salem Coca-Cola Bottling Co., Inc.,* 92 N. H. 97, 98, 25 A.2d 125, 126-27 relied upon by the defendant held that "the common law concept of privity" was not abolished by the Uniform Sales Act. But the Act did not embody the concept in

statutory law. The Uniform Commercial Code expressly restricted the concept by providing that a warranty of fitness for a particular purpose shall extend beyond persons in privity of contract to persons in the family or household of the buyer "if it is reasonable to expect that such a person may use . . . or be affected by the goods," and he is injured in his person by breach of the warranty. RSA 382-A:2-318. As appears from the comments to the section (comment 3) the section was not intended to "enlarge or restrict the developing case law" on whether such warranties "extend to other persons in the distributive chain." The common law concept of privity is subject to extension, modification or extinction without legislative aid, as the common law in its normal evolution may demand. See *Robinson* v. *Colebrook Savings Bank,* 109 N.H. 382, 385, 254 A.2d 837, 839 and cases cited.

In the case at bar the plaintiff was not a chance bystander as the defendant suggests, but an employee of the purchaser, reasonably to be expected "to be affected" by the machine in question if it proved to be defective. Hence we have no hesitation in holding in today's climate in this field that the plaintiff was entitled to the benefit of any warranty of fitness which might be found to have accompanied the sale to his employer. See *Buttrick* v. *Lessard & Sons,* 110 N. H. 36, 260 A.2d 111; Prosser, The Fall of the Citadel, 50 Minn. L. Rev. 791; Donovan, Products Liability, 19 Me. L. Rev. 181. Clearly there was evidence in the case from which the jury could find that the machinery company, to the defendant's knowledge, relied upon the defendant's judgment that the machine was fit for the purposes for which the company proposed to use it. If breach of such a warranty was found to have caused the plaintiff's personal injury, he was entitled to recover. The cases in this jurisdiction, such as *Smith* v. *Salem Coca-Cola Bottling Company, supra,* relied upon by the defendant, no longer carry the authority asserted when they were decided, more than a quarter of a century ago. The defendant's exceptions to the instructions upon the three grounds heretofore stated are overruled.

As a preface to the instruction given in response to the defendant's seventh request hereinbefore quoted, and after stating that the defendant claimed that the Improved Machinery Company and its employees were the sole cause of the accident and that the burden of proof on this issue was upon the defendant, the court in response to a request by the plaintiff stated: "Also any

negligence of the Improved Machinery Company cannot be charged to the plaintiff, Mr. Murray, or imputed to him. " The defendant argues that this was submission of an issue not in the case and hence misleading and prejudicial. *Fortier* v. *Stone,* 79 N. H. 235, 107 A. 342. No claim of contributory negligence was before the jury and the defendant concedes that it was properly so instructed. The instruction on imputed negligence falls into the same category. No issue was thereby submitted to the jury. On the contrary, any question as to whether the employer's conduct could be charged to the plaintiff was effectively withdrawn. The instruction was neither erroneous nor prejudicial (*Dervin* v. *Company,* 81 N.H. 108, 114, 122 A. 353, 357), followed as it was by the clear instruction that if the employer's failure to keep the clutch in adjustment was the sole proximate cause of the injury, the jury should return a verdict for the defendant.

The defendant sought an instruction to the effect that a manufacturer is entitled to assume that a product will be put to normal use, and is not liable where "injury results from a failure to keep the manufactured product in good working order. " The principle thus relied upon is not subject to serious question. *Brown* v. *General Motors Corp.,* 355 F. 2d 814 (4th Cir. 1966). The requested instruction was but another way of stating what the jury was told by the defendant's seventh request, *supra,* which the charge incorporated verbatim. Reversible error is not to be predicated upon failure to restate a proposition in alternative language. *Currier* v. *Grossman's,* 107 N. H. 159, 161, 219 A.2d 273, 274 and cases cited.

On the general issue of negligence, the defendant complains that the trial court failed to supply the jury with a suitable standard or criterion to determine whether the defendant had properly designed "a complex highly technical machine. " In this regard the jury was given general instructions upon negligence and causation, and was told that the defendant "in making its design of the machine " had a duty to act "in a reasonable and prudent manner. " It was also told that the test "is whether it knew . . . or should have known in the exercise of due care that [the machine] could have caused injury to Mr. Murray and that [whether?] this injury which was caused to Mr. Murray was proximately caused by the negligence of the defendant. " While the expression "could have caused injury, " if accurately reported, may have been cumbersome and somewhat inaccurate, the in-

structions as a whole were not beyond the jury's comprehension. Standards by which to judge the defendant's conduct had been furnished to the jury through testimony of experts admittedly versed in the technical complexities of the machine in question. The issues to be decided based upon the technical evidence were comparatively simple. Did the circumstances require that in the exercise of due care the devices suggested by the plaintiff's experts should have been supplied with the machine? *See State* v. *Coolidge,* 109 N. H. 403, 422, 260 A.2d 547, 561.

The instructions requested by the defendant on this issue would have added little to those which were given. Its fifteenth and sixteenth requests would have set out, as a standard, the practice and safety standards generally followed in the trade at the time of manufacture. Under our settled law they were properly denied. *Bouley* v. *Company,* 90 N. H. 402, 403, 10 A.2d 219, 220; *White Mt. Power Co.* v. *Whitaker,* 106 N. H. 436, 440, 213 A.2d 800, 803.

In response to the plaintiff's thirteenth request for instructions, the court gave an instruction which was an adaptation of the proposition stated in Restatement, Second, Torts *ss.* 388 and 394. *Lenz* v. *Company,* 88 N. H. 212, 214, 186 A. 329, 330. *See also* Restatement, *supra, s.* 398; Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L. J. 816 ( 1962 ); Annot., Products Liability - Duty as to Design, 76 A.L.R. 2d 91. It followed an instruction to the effect that causal failure by the defendant to warn of a known danger would make it liable. The instruction excepted to was: " If you find that the defendant should have reasonably expected the plaintiff to be endangered or injured by the use of the lathe, and further, that the defendant knew or should have known that the lathe was likely to be dangerous in its use, then it would be responsible for the harm caused by the lathe. " The defendant argues that the instruction was defective because it omitted the proposition stated in *s.* 388, *supra,* subsection ( b ) that the supplier " has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition. " Restatement, Second, Torts *s.* 388; *see also,* comment *k.* The plaintiff's request incorporated this factor in terms of the realization of the dangerous condition " by Improved Machinery, Inc. " which may explain why the instruction was not given in the form requested. The defendant argues that the qualification found in section 388 ( b )

of the Restatement is an essential limitation upon its liability, and that its omission is cause for a new trial.

We do not adopt this view. It was obvious to the defendant that the machine supplied would be used by the buyer's employees and that dangers arising from its use would be to them. The defendant's recommendations concerning adjustment of the clutch suggested a risk of damage to the clutch rather than risk of injury to the operator. There was no evidence in the case to suggest that the operator of the machine, or those like the plaintiff who would be employed in its vicinity, would appreciate the danger of personal injury from overheating, without warning of it. Hence it may fairly be said that no reason existed to submit to the jury an issue not presented by the evidence.

Another instruction given apparently upon the court's own motion, and bearing upon the duty to use ordinary care with respect to the condition of machinery supplied to another, was taken directly from the language of *Heaven* v. *Pender,* L.R. 11 Q.B.D. 503. *See Kenney* v. *Wong Len,* 81 N. H. 427, 429, 128 A. 343, 344. Although it contained no reference to the supplier's knowledge of the likelihood that the user would fail to recognize the danger, the defendant apparently did not consider the omission of such moment as to require exception to be taken.

Citing *Wisutskie* v. *Malouin,* 88 N. H. 242, 246, 186 A. 769, 771, the defendant argues that its motion for a directed verdict should have been granted because the plaintiff's claim of negligence and defective design "was not supported by the weight of the evidence." As made however, the motion was upon the same grounds advanced in support of the motion for a nonsuit, which were the usual grounds of "no evidence" to warrant a verdict for the plaintiff. A motion to set the verdict aside because against the weight of the evidence presents an issue of fact for the trial court. *Chagnon* v. *Union Leader Co.,* 103 N. H. 426, 446, 174 A.2d 825, 838. The record in this case discloses no such motion, and hence no finding by the trial court. Nor can we hold that the record would compel a finding that the verdict was against the weight of the evidence. *See Jolicoeur* v. *Conrad,* 106 N. H. 496, 500, 213 A.2d 912, 915.

So far as the argument is based upon the proposition that there was no evidence of defective design or manufacture, it cannot be accepted. *Cross* v. *M. C. Carlisle & Co.,* 368 F.2d 947, 954 ( 1st Cir. 1966 ). In our judgment the record is not compara-

228

ble to the situation considered in *Gossett* v. *Chrysler Corp.,* 359 F.2d 84 ( 6th Cir. 1966 ), where in dismissing the complaint the court pointed out that there was no evidence as to how the design in question could be improved upon. The exceptions to denial of the motions for nonsuit and directed verdict are over-ruled.

*Judgment on the verdict.*

GRIFFITH, J., did not sit; the others concurred.