Rockingham, }
Dec. 7, 1926. }

### LAURA BYRON *v.* BOSTON & MAINE RAILROAD.

A railroad's duty under P. L., c. 249, s. 1, to maintain its station platform in a reasonably safe condition extends to all patrons who use the platform to board trains whether they come upon the platform directly from the station or by any other route.

In an action for negligence the fact that more precaution on the part of the plaintiff would have prevented his injury does not necessarily defeat recovery, if with the plaintiff's knowledge and in the confronting situation he acted as a person of average prudence in not further investigating the surrounding conditions.

The law does not adopt particular circumstances as the measure of due care nor require that to be duly careful an act shall be devoid of all risk, but the actor is held only to the standard of care of the average prudent person under all the circumstances.

On the question of a plaintiff's due care his testimony giving his generalization as to what would constitute due care under altogether different circumstances from those in issue has no tendency to establish his knowledge and appreciation of the existence of danger at the time of his accident.

The conduct of a prospective passenger while walking upon a station platform
and her course of approach thereon to the train warranted the submission to
the jury of the question of her due care in not avoiding an icy place upon the
platform.

An assertion of counsel concerning a vital issue, unsupported by evidence and
calculated to prejudice the jury, causes a mistrial.

An exception to an argument without objection thereto and a ruling thereon by
the court is ordinarily ineffective; but the acquiescence of opposing counsel,
"yes, you except to it," waived a request for a formal ruling.

CASE, for negligence in the maintenance of a station platform.
Trial by jury and verdict for the plaintiff.

Transferred by *Burque*, J., on the defendant's exceptions to the
denial of its motions for a nonsuit and for a directed verdict, and to
the plaintiff's argument. The facts appear in the opinion.

*William H. Sleeper* (by brief and orally), for the plaintiff.

*George T. Hughes* and *Stanley M. Burns* (*Mr. Hughes* orally), for
the defendant.

SNOW, J. The defendant's station at Exeter is upon the south
side of two parallel main tracks, the southerly of which is known
as the "east-bound," and the northerly as the "west-bound." The
main platform is between the station and the east-bound track, and
is partially protected by a projecting roof in front of the station and
by open awnings or roofs extending east and west therefrom. The
middle platform separates the two tracks and is uncovered. Both
platforms are of concrete construction, and are connected by four
planked crossings, two of which are located in front of the station,
the remaining two being situated one in either direction and some
little distance therefrom. Otherwise the spaces between the rails
are unfilled. Patrons of east-bound trains are received from, and
discharged upon, the main platform, while those traveling upon
west-bound trains use the middle platform.

The plaintiff's evidence tended to show that she and her sister,
who were intending passengers upon the west-bound noon train and
already supplied with tickets, approached the station from a northerly
direction by a path in common use, which entered through an opening
in the fence of the railroad location at a point westerly of the plat-
forms. Passing in front of the engine which was at rest, they were
proceeding easterly upon the middle platform when, at a point some
six feet easterly of the easterly end of the most westerly plank cross-

ing, the plaintiff claims to have slipped upon a patch of ice and to
have fallen upon the platform, receiving the injury complained of.
The train consisted of an engine, baggage car, smoking car, and two
coaches. The alleged point of the accident was opposite the middle
or rear end of the baggage car. The plaintiff and her sister describe
the patch of ice, from observations made after the accident, as about
the size of a "chair bottom," of oval shape, higher in the center
and thinner at the edge, clear of sand and ashes.

The defendant concedes its duty to maintain station platforms in
reasonably safe condition (P. L., c. 249, s. 1; *Haselton* v. *Railway*,
71 N. H. 589, 591), but contends that it was not responsible to the
plaintiff for the condition of the platform at the place of the accident.
This position seems to be based upon the claim that it owed no duty
to intending passengers approaching the train from other directions
than the station unless, and until, they had reached the line of
travel which they would have taken if traveling directly from the
station to the train. Manifestly the duty of the railroad to its
patrons has no such narrow limitation. As the plaintiff held a monthly
ticket, and the train was ready to receive passengers, she had no
occasion to enter the station. She had been employed at Haverhill,
and, when she had work, had been accustomed to travel daily by
train to and from her place of employment. She had customarily
used the path in passing between her home and the station. There
was evidence that it was a "good path" and in use by the defend-
ant's employees and others. If, however, it were conceded that the
plaintiff was a wrongdoer until she reached the middle platform,
such prior illegality of her conduct did not relieve the defendant of
its duty to her after she had reached a place ostensibly prepared for
passengers. There is no claim that the middle platform was not
designed for the use of passengers to its full extent, or that it was not
customarily so used when the length of the train or other circum-
stances required. If the area to which the defendant's invitation to
intending passengers extended was not co-extensive with the bound-
aries of the concrete platform, no obvious limitation thereof is dis-
closed by the evidence. It cannot be said as a matter of law that
the defendant's duty of maintenance as respects this plaintiff was
limited to the direct course of travel from the station to her train.

Nor is the plaintiff's want of ordinary care conclusively estab-
lished by the course of her approach. It is true that when she
crossed the track ahead of the engine she might have continued
across the east-bound track to the main platform which had the

protection of a sheltering awning, and thence proceeded by that
platform and by one of the plank crossings to her train. It cannot
be said, however, that no prudent person would have proceeded by
the middle platform as she did.

Upon cross-examination the plaintiff admits that she did not
notice, or look at, the platform before she fell; that if she had looked
she could have seen the ice and would not have fallen. She, how-
ever, sets up as excusing circumstances that, upon crossing the
northerly track, she had first stopped to reassure her sister who
was timid about crossing in front of the engine, and that just be-
fore she fell she had again stopped and turned to make sure the
sister was following her; that at this moment she was directed by
a train man, standing at the front end of the nearest passenger
coach, to "come on" or "hurry up"; that, hastening in response to
this admonition, she turned again to go forward and had taken one,
two or three steps, when she encountered the icy surface and fell;
that she was afraid they were going to miss the train and was walk-
ing fast; that she was thinking about her sister, of what the train-
man said and whether the train would leave before they got there;
that she supposed that the platform would be clean and sanded,
and did not look at it because she did not think it was necessary.
The defendant's evidence tended to show that as a matter of practice
the station platforms, particularly the middle platform, were kept
sanded "wherever there was any ice, or any danger of slipping
whatsoever." The last previous storm occurred six days before the
accident, when 6.6 inches of snow fell. The temperature in the
meantime had ranged between 46 degrees above zero and 27 degrees
below.

It cannot be said that it conclusively appears upon the evidence
that the ordinary person, under the exigencies of the situation in
which the plaintiff was placed, would not have proceeded as she did
in reliance upon the maintenance of the platform in the condition
in which it was normally and usually kept. "It may be conceded
that if the plaintiff had looked she would have refrained from step-
ping as she did, and still the defendants may be liable. The fact
that more precaution on her part would have prevented the accident
does not necessarily defeat a recovery. The question is whether
some fair-minded men might say that, with her knowledge and in
her situation, she acted with reasonable prudence without further
investigating the condition of the ground she was to alight upon.
The test of her right to have the question of her care determined by

a jury was not whether she did all that she could do in the way of taking precautions, but whether she did enough so that her conduct might be thought to be that of a person of average prudence." *Bass* v. *Railway*, 70 N. H. 170, 173. Unless the carelessness of the plaintiff was so apparent that all fair-minded men must agree that she was negligent, the case was properly submitted to the jury. *Blood* v. *New Boston*, 77 N. H. 464, 465; *Martel* v. *White Mills*, 79 N. H. 439, 441.

The defendant, however, relies in argument upon an alleged admission by the plaintiff of the carelessness of her conduct: "Q. Well, now, going along there upon any sidewalk, don't you think it is wise for you to look to see whether there is snow or ice in front of you? A. Yes, I think so. Q. You think you are careful to go along in the winter-time in zero weather immediately after a snowstorm without looking to see whether there is an accumulation of snow or ice anywhere along upon the sidewalk where you are walking? A. No. Q. You would think that was a careless thing to do, would n't you? A. Yes, it is." Upon redirect examination, she explained that in this testimony she did not have reference to the particular situation at the time of the accident, but meant that "in a general way it was careless not to look where you were going." If the jury accepted this explanation, as it had the right to do, it is not perceived how such a general and academic statement, differentiated from the circumstances of the case, could have influenced, much less concluded, the jury. It cannot be assumed that the plaintiff intended to set up a self-imposed rule of conduct as the measure of her responsibility in place of the external standard which it was the duty of the jury to apply. *Sevigny* v. *Company*, 81 N. H. 311, 313. The law does not adopt particular circumstances as the measure of due care. The rule, as it is defined in this jurisdiction, holds the actor only to the standard of care of the average prudent person under all the circumstances. *Smith* v. *Railroad*, 70 N. H. 53, 85; *Blood* v. *New Boston*, *supra*; *Bass* v. *Railway*, *supra*; *Weeks* v. *Company*, 78 N. H. 26, 29; *Sevigny* v. *Company*, *supra*. It does not require that the act shall be devoid of all risk. *Boody* v. *Company*, 77 N. H. 208, 214; *Prichard* v. *Boscawen*, 78 N. H. 131, 133; *Kelland* v. *Company*, 75 N. H. 168, 169; *Derosier* v. *Company*, 81 N. H. 451, 468.

If the plaintiff's generalization is of material weight for any purpose, her statement, being retrospective, had no tendency to establish her knowledge and appreciation of the existence of danger at the time of the accident. It is in this vital respect that her admis-

sions differ from those of the plaintiff in *Jennings* v. *Railroad, ante,* 323, upon which the defendant relies. There, it conclusively appeared from the plaintiff's testimony that, when he let himself down from the doorway of the freight house to the side track upon which cars were customarily set for loading, he not only knew that it was a careless thing to do without looking for a train, but that he fully appreciated that a train might be coming, and that, notwithstanding such knowledge and appreciation, he carelessly failed to look seasonably to avoid a collision.

The defendant's motions for a nonsuit and directed verdict were properly denied.

The defendant's baggage man, Mr. Harrington, testified that it was his duty and practice to open the door of his car overlooking the platform before the train came to a stop, and to keep it open until the train started; that it was his further duty and practice, after receiving the baggage, to "look out the baggage car door, both ways" and to "see that the passengers are not running for a train"; that he did not see any lady fall upon the station platform. As the plaintiff claimed to have fallen opposite the baggage car the witness' position afforded a superior opportunity for observation. His testimony was, therefore, important evidence in support of the defendant's principal contention that the plaintiff did not meet with an accident at the time and place alleged. In further support of this position the defendant submitted the testimony of its trainmen, including the baggage-master, of their unfailing observance of a rule of the company to make written reports of every accident, or near accident, no matter how slight. The testimony of Mr. Carney of the claim department was offered to show that no report of the alleged accident was made, and that the first notice thereof was contained in a letter of the plaintiff's attorney, received nearly a month and a half after the alleged date of occurrence.

The plaintiff's counsel stated in argument: "Their station agent claims that he knew early in March that that happened, and we don't know, gentlemen, how much earlier they found it out through the talk at the depot there. We can only surmise that, but we do know that a certain man named Bancroft went to work on this case and investigated it, and we know *they sent up a man, Carney, up here from the Boston Claim Department, and told him how to question Mr. Harrington.* He evidently knew that by questioning Mr. Harrington in a certain way that by holding up before that man who is evidently a man conscientious in his duty, and can't remember what

happened back there that time, that he can make that man say by questioning him in a certain way, that he at that day was looking out of that baggage car door to see if people were late in coming to their trains." . The defendant excepted and directed attention more particularly to the language which we have italicized.

The testimony of Carney was confined to the practice of the claim department, and to the facts disclosed by its records. Upon cross-examination, he denied that he had made an investigation of the accident or had any personal knowledge that one was conducted by Bancroft. The record discloses no evidence that he talked with the witness Harrington, with Bancroft or with counsel. The assertion of counsel in argument concerned a vital issue. It impugned the credibility of both Carney and Harrington whose testimony, if believed, disproved the plaintiff's claim. As the statement was unsupported by evidence and was calculated to prejudice the jury, there was a mistrial.

The plaintiff's contention that the exception was ineffective, because taken to the argument and not to a ruling of the court (*State* v. *Ketchen*, 80 N. H. 112, 114; *Tuttle* v. *Dodge*, 80 N. H. 304, 312) is without merit. Immediately upon the taking of the exception the plaintiff's counsel stated, "yes, you except to it." This justified the assumption by opposing counsel that it was unnecessary to further interrupt the plaintiff's argument by a request for a formal ruling.

*Verdict set aside: new trial.*

All concurred.