Coös, }
March 4, 1930. }

MARY WILSON *v.* BERLIN STREET RAILWAY.

*Ovide J. Coulombe* and *Ira W. Thayer* (*Mr. Thayer* orally), for the plaintiff.

*Jesse F. Libby* and *Harry G. Noyes* (*Mr. Libby* orally), for the defendant.

MARBLE, J. It is the general rule that a street railway must select a reasonably safe place for landing its passengers. *Harrington* v. *Railway*, 76 N. H. 575; *Bass* v. *Railway*, 70 N. H. 170; *Call* v. *Railway*, 69 N. H. 562, 564. The defendant does not question this rule so far as it relates to inter-urban transit, but contends that it does not apply to railways traversing city streets over which they have no control.

It is further suggested that the place where the plaintiff alighted was as safe as the circumstances would permit; that the ice and ruts extended the entire length of the street, and that the same danger would have existed at whatever point in the locality the motorman had stopped the car.

Assuming all this to be true, it does not follow that reasonable men might not deem the defendant negligent. The ruts were of such a nature that they must have been formed long enough for the defendant, in the exercise of ordinary care, to have discovered them. The rule of *Hickey* v. *Berlin*, 78 N. H. 69, 71, is therefore inapplicable. See *Young* v. *Railway*, 78 N. H. 605. The relation of carrier and passenger did not terminate until the plaintiff was safely on the ground. 10 C. J. 625, and cases cited. And even if the defendant had no right to remove the ice from the street, due care might nevertheless require the motorman to warn the plaintiff of the danger or even assist her to alight. Nellis, Street Railways, s. 308, and cases cited. It is a fair inference from the evidence that he did neither of these things.

The defendant had the right, however, to remove snow from its tracks. An ordinance, passed when the railway was constructed, provided as follows: "The said Railway shall at its own expense clear the snow from the tracks and shall not, except with the consent

of the Street Commissioner, deposit it in the street alongside the track, but shall draw the same away, and if the removal of said snow from said railway track shall render the street so uneven, inconvenient or dangerous, as to necessitate the removal of snow from portions of the street not covered by said tracks, said Railway Company shall also at its own expense remove said snow at the direction of the Street Commissioner."

Obviously, the purpose of the ordinance was to provide for the safety and convenience of travel during the winter and for a division of labor and expense in effecting that purpose. The language must therefore be liberally construed. It is not reasonable to suppose that any technical distinction between snow and ice was intended, and the word "tracks" may fairly be defined as that portion of the highway which the defendant occupied as a carrier of passengers. See *Osgood* v. *Insurance Co.*, 76 N. H. 475. This necessarily included the spot where passengers would naturally step when descending from a car. The plaintiff's claim that there was a written contract between the city and the defendant with reference to the matter is not sustained by the evidence.

While the plaintiff knew that "it had been a general icy time," she did not know of the existence of the ruts, and "stepped down the same as anybody would." On the issue of contributory negligence the defendant had the burden of proof. P. L., *c.* 328, *s.* 13. Clearly that issue was for the jury. *Byron* v. *Railroad*, 82 N. H. 434, 437, 438, and cases cited.

*Exception sustained.*

All concurred.