## JAMES W. MANUEL *vs.* THE MAYOR AND CITY COUNCIL OF CUMBERLAND.

*Negligence — Workman Digging Trench Injured by Cave-in Caused by Proximity to Gas Main—Location of Gas Main Known to Defendant Municipality and Unknown to Workman—Duty of Employer to Provide Safe Place for Work—Notice of Hidden Danger—Questions for the Jury— Instructions.*

When a municipal corporation, charged with knowledge of the location of gas mains under its streets, directs that a sewer be made under the supervision of a foreman, and on account of his failure to cause the trench dug for the sewer to be braced near a gas main, the earth caves in and falls upon a workman in the trench, the municipality is liable to him for its failure to use due care to provide a safe place in which to work. This liability cannot be avoided on the ground that due care was used to secure a competent foreman, or that the injury was caused by the negligence of a fellow-servant, since the positive duty of an employer to provide a reasonably safe place in which the work is to be done cannot be delegated to others, so as to relieve the employer from that obligation.

Plaintiff was employed by the defendant municipality to assist in digging a trench in a street for a sewer pipe. A gas main was laid parallel with the trench about two and a half feet below the surface of the street, and at one point was only about eighteen inches from the trench, which itself was about

five and a half feet deep. The work was done under the direction of a foreman, who did not know of the location of the gas main, nor did the plaintiff or the other workmen. On the day of the accident, one of the workmen suggested that the sides of the ditch should be braced, but the foreman refused to have it done, saying that it was all right. Soon afterwards, the side of the ditch next to the gas main caved in and seriously injured plaintiff there at work. An ordinance of the city required it to keep a map showing the locality of all underground pipes and mains, and the particular gas main in this case had been put down under the supervision of the City Engineer. *Held,* that the defendant was chargeable with knowledge of the location of the gas main, and if its proximity to the sewer trench rendered the place of work at that point unsafe, it was the duty of the defendant to inform the foreman of such proximity in order that he might take precautions to protect the men while digging the ditch.

*Held,* further, that the question whether the nearness of the gas main to the trench made it likely that the earth would cave in, and whether such caving in would have been prevented by bracing the trench, should have been submitted to the jury.

*Held,* further, that if a prudent foreman would have caused the trench to be braced for safety, the defendant cannot escape liability by showing that it had used due care to select a competent foreman.

*Held,* further, that the jury should have been instructed as requested by the Plaintiff that, if the falling of the side of the sewer trench was due to its proximity to the gas main, the location of which was unknown to the plaintiff, but was known to the defendant, and if the defendant was negligent in not having the sewer trench braced at that point, which bracing would have prevented the accident, then the plaintiff is entitled to recover, if the jury further found that he was himself in the exercise of due care. Also, that if the jury found that a workman suggested the bracing of the sides of the trench before the accident, and the foreman said it was not necessary, and ordered the plaintiff to proceed with the work, that such reply and order was an assurance of safety upon which the plaintiff had the right to rely, and that he

was entitled to recover for the injury, unless the danger was obvious to the senses of any man and unless he failed to exercise ordinary care in going into the trench under the circumstances.

When a municipal ordinance requires the city to keep an underground map showing the location of all sewers, gas mains and pipes, there is a presumption in law that this requirement was duly observed.

*Decided June 29th, 1909.*

Appeal from the Circuit Court for Garrett County (KEEDY and HENDERSON, JJ.).

*Plaintiff's 1st Prayer.*—The jury is instructed that if they find from the evidence that at the time of his injury, if they so find, James W. Manuel was in the employ of the defendant, and engaged in making an excavation for a sewer on Maryland avenue, one of the streets of Cumberland, Md., under the order and direction of the Superintendent of the defendant; and that while engaged in such work on or about the 8th day of April, 1907, he was injured by the crumbling or slide of a bank of said excavation, which was due to the location of a gas main or pipe in proximity to said excavation, if they so find, and that the location of said gas main or pipe was unknown to the plaintiff, but was put down under the franchise granted by the defendant to the Cumberland Gas Light Company and under the direction of the defendant's City Engineer, and that the defendant was negligent in not having the bank or side of said excavation shored or braced, and that the shoring or bracing of said bank or side of the excavation would have prevented the injury complained of, then they shall find their verdict for the plaintiff; provided the said plaintiff was using due care and caution on his part.  (*Rejected.*)

*Plaintiff's 2nd Prayer.*—The jury is instructed that if they find from the evidence that the defendant is a corporation

having control of the streets, lanes, alleys and avenues of the City of Cumberland, and that the plaintiff while engaged in making an excavation along Maryland avenue, one of the streets or avenues of the said City, for a sewer for the defendant, on or about the 8th day of April, 1907, under its order and direction, was injured by the slide or caving in of said bank or side of said excavation, and that the slide or caving in of said bank or side of the excavation was due or caused by the location of a gas main or pipe put down or laid under or along said Maryland avenue, under a franchise granted by the defendant to the Cumberland Gas Light Company, in proximity to said excavation, and that the location of said gas main or pipe was unknown to the plaintiff, if they so find, and that the plaintiff was using due care and caution on his part and was in a place where he had been placed or directed by the defendant to work, and that the defendant was negligent in not shoring or bracing the bank or side of said excavation, and that such shoring or bracing of said bank or side of the excavation would have prevented the injury complained of, then their verdict shall be for the plaintiff. (*Rejected.*)

*Plaintiff's 3rd Prayer.*—The jury is further instructed that if they find from the evidence that shortly prior to the injury complained of William Brant, the companion of the plaintiff, suggested to the defendant's superintendent, in the hearing of the plaintiff, that the bank or side of the excavation would be safer if braced or shored, and that the defendant's superintendent replied to the said Brant, in the hearing of the plaintiff, that the bank was safe and ordered the said Brant and the plaintiff to go down to work in said excavation, then such statement and order was an assurance that the plaintiff had a right to rely upon, and if he was injured by the slide or caving in of such bank on going into the excavation to work after such assurance of its safety and order to go down to work in said excavation by the defendant's superintendent, if they so find, then their verdict shall be for the plaintiff, unless the risk of going down to work in said exca-

vation was obvious to the sense of any man, and that the plaintiff did not exercise ordinary care in going into said excavation under such circumstances.  (*Rejected.*)

*Defendant's 1st Prayer.*—That the mere falling in or giving away of the embankment of the ditch or trench, by which the plaintiff received the injury complained of in this cause (if they find he was so injured) is not of itself sufficient evidence of negligence on the part of the defendant to entitle the plaintiff to recover.  (*Granted.*)

*Defendant's 2nd Prayer.*—If the jury shall find from the evidence in this cause, that the plaintiff was on the 8th day of April, 1907, employed by the defendant as a laborer and engaged with other servants of the defendant in digging, excavating or constructing a ditch or trench on Maryland avenue, street in the City of Cumberland, and that whilst so employed he received the injury complained of by reason of the giving away or falling in of said embankment of said ditch or trench, and if they shall further find that such giving away or falling in of said embankment was caused by its careless or faulty construction, and such faulty and careless construction of said embankment was due and owing to the negligence of other servants of the defendant whose duty it was to see that such ditch or trench should be excavated and such embankment be constructed in a skillful and safe manner; yet the plaintiff cannot recover unless he shall satisfy the jury that in selecting the employees or servants through whose negligence the accident occurred, the defendant did not use reasonable care in procuring for said work or operation faithful and competent employees; and further that in this case the plaintiff has offered no evidence from which the jury may find that the defendant did not use such care in the selection of its said employees.  (*Granted.*)

*Defendant's 3rd Prayer.*—If the jury shall find from the evidence in this cause, that the plaintiff before entering the ditch or trench, at the time he received the injury complained of in this cause (if they shall find he was so injured), knew, or by the exercise of a reasonable degree of prudence could

have known of the dangerous and unsafe condition of the embankment of said ditch or trench, then he cannot recover in this cause, and their verdict must be for the defendant. (*Granted.*)

*Defendant's 4th Prayer.*—If the dangerous character of the embankment of the ditch spoken of in the evidence in this cause was so open and obvious that the plaintiff must have known of the existence of the same, or by the exercise of a reasonable degree of prudence, could have known of such dangerous character of said embankment, then in undertaking the performance of such hazardous duties as necessitated his entering said ditch, the plaintiff assumed all such risk as was incident to his employment, and their verdict must be in favor of the defendant. (*Granted.*)

*Defendant's 5th Prayer.*—That the burden of proof is upon the plaintiff in this cause to make out his case by a preponderance of testimony. (*Conceded.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*P. Clarence Barnes* (with whom were *D. James Blackiston* and *Thomas J. Peddicord* on the brief), for the appellant.

*Joseph Sprigg, Gilmor S. Hamill* and *Robert W. McMichael,* for the appellee, submitted the cause on their brief.

PEARCE, J., delivered the opinion of the Court.

The appellant, James W. Manuel, on the eighth day of April, 1907, was an employee of the appellee, the Mayor and City Council of Cumberland, and was engaged with other workmen in digging a trench in which a sewer pipe was to be laid, the work being done under the immediate supervision of Lem. Brant who testified that he was "foreman of all the City's sewer works under the Street Superintendent and City Engineer." This sewer trench was about five and a half feet

deep. Parallel to this trench in the same street, Maryland avenue, was a gas main, which at a certain point on this avenue was about 16 or 18 inches from this sewer trench, and was about two and a half feet below the surface of the street. When the work for the day began on April 8th, the plaintiff with Wm. C. Brant and J. W. Clark, were about to get into the trench, when Wm. C. Brant said to the foreman: "Wouldn't it be better to brace the sides of this ditch?" Wm. C. Brant testified that there had been a little rain and snow the night before, and while he did not think the trench looked dangerous, he thought it would be better braced. The foreman replied: "It is all right and will soon dry off; go down in the ditch and get to work." The plaintiff and Clark corroborated Wm. C. Brant as to his suggestion of bracing the sides of the trench, and as to the foreman's reply, but he denied both the suggestion and his reply. The men got into the ditch, and between eleven and twelve o'clock, the side of the ditch between it and the gas main fell into the sewer trench for a distance of eight or ten feet. It slid in almost in a slab and pinned Manuel against the other side of the trench up to his waist. His left arm was buried under the earth and his wrist was badly injured. The bones of the wrist were dislocated and there was a split fracture of the outer bone of the forearm, which Dr. Smith, the only physician and surgeon sworn, testified was a serious and permanent injury.

Section 27 of the City Ordinances was read in evidence, which requires the City to keep an underground map of the City, showing all street lines, water courses, streams, bridges and culverts; "the location of all sewers or drains; of all gas mains, service pipes and valves and their size; of all steam heating pipes; and any other data below the surface of the ground along the streets or alleys that may be deemed of value for information as against underground improvements or repairs," and there is a presumption in law that this requirement was duly observed. It was admitted that the gas main in Maryland avenue in question in this case, was put

down under the authority of the franchise and ordinance of the City by the Cumberland Gas Light Company, under the direction and supervision of the City Engineer. It therefore appears that the City is chargeable with full knowledge of the location of this gas main, and its depth below the surface of the street, while the undisputed evidence is that neither the plaintiff nor any of the men knew of the location of the gas main. It does not appear from the evidence that the foreman knew of its location, and in the absence of positive evidence that he did, the presumption is he did not. Wm. C. Brant and Clark both quit that work next day, and got employment elsewhere. It also appears from the testimony of the foreman that the City Engineer gave him the grade and location for the sewer trench, and that his directions were followed in its construction, but that he was not furnished with any map to show where gas or water mains were located.

At the close of the plaintiff's testimony the defendant offered a prayer to withdraw the case from the jury, but as this prayer was renewed at the close of the defendant's testimony and of the whole case, the prayer first offered needs no consideration.

The plaintiff offered six prayers of which the first, second and third were rejected, and the fourth, fifth and sixth were granted.

The plaintiff's fourth prayer instructed the jury that the defendant, under the ordinance above mentioned, was charged with knowledge of the location, size and depth of all pipes and mains put down under its streets under any franchise granted by it.

The plaintiff's sixth prayer instructed the jury that the defendant was bound to use reasonable care to provide a safe place for plaintiff to work in, and that if said place was unsafe for that purpose by reason of the want of such care, then the plaintiff was entitled to recover, unless the jury found he knew, or ought to have known by the exercise of reasonable

care, that it was unsafe, or unless by his own negligence he directly contributed to the accident.

The fourth prayer is the usual prayer on the measure of damages in event of recovery.

The plaintiff's rejected prayers will be set out by the reporter.

The substance of the first prayer is that if the falling of the side of the sewer trench was due to its immediate proximity to the gas main; that the existence and location of the gas main was unknown to the plaintiff, but was known to the defendant, and that it was so located by its authority; that the defendant was negligent in not having the sewer trench braced at that point, and that such bracing would have prevented the accident, then the plaintiff could recover if the jury found he was himself in the exercise of due care.

The second prayer presents the same legal propositions, with slight verbal changes.

The third prayer instructs the jury that if they find Wm. C. Brant suggested the bracing of the sides of the trench before the accident, and the foreman replied that was not necessary and ordered the plaintiff to proceed with the work, that such reply and order was an assurance of safety upon which he had the right to rely, and if he was subsequently injured as claimed in the evidence, he was entitled to recover unless the danger was obvious to the sense of any man, and unless he failed to exercise ordinary care in going into the trench under the circumstances.

The defendant offered seven prayers. The first and seventh, which sought to take the case from the jury were rejected, and this ruling was so obviously correct that we shall not pause to consider it. The sixth, which was conceded, instructed the jury that the burden of proof was upon the plaintiff to establish his case by a preponderance of testimony. The defendant's second, third, fourth, and fifth prayers were granted. These will also be set out by the reporter.

The second prayer asserts that the mere falling in of the side of the trench is not sufficient evidence of negligence on

the defendant's part entitling plaintiff to recover. The fourth and fifth prayers relate to the question whether the dangerous condition or the character of the trench was open and obvious, and these prayers both present the same proposition as the qualification contained in the closing paragraph of the plaintiff's rejected third prayer, and in the body of his first and second rejected prayers. If there was any evidence requiring the plaintiff so to qualify his prayers, the defendant was entitled to an instruction, couched in appropriate language, expressly denying the right of recovery, if the jury found the danger was open and obvious to any one, and we do not think those instructions are open to any objection.

The important questions in the case arise upon the plaintiff's three rejected prayers and the defendant's third rejected prayer.

The specific negligence charged in the declaration is the failure of the defendant to provide a safe place in which to do the work in which the plaintiff was employed. The place may be unsafe either because of some defect in its construction, or its own arrangement, or because, though properly constructed and arranged, of its location with reference to something else which may create danger in the proper performance of the duty of the plaintiff. An illustration of the negligence first mentioned is found in *Elmer* v. *Locke,* 135 Mass. 135, where a brakeman was injured by the fall of a defective trestle, and in which it was held that the master could not escape liability by proving that he delegated to a proper agent the construction of the trestle. Similar illustrations may be found in *Flike* v. *Boston & Albany R. R.,* 53 N. Y. 549, and *Paulmier* v. *Erie R. R.,* 5 Vroom. 151.

Illustrations of negligence of the latter character are found in *American Tobacco Co.* v. *Strickling,* 88 Md. 500, where the defendant was held liable for requiring the plaintiff to sweep the floor of a room in which an unguarded and rapidly revolving vertical shaft was in use, without informing her of the risk it created; and also in *Pikesville R. R. Co.* v. *Russell,* 88 Md. 563, where a conductor of a trolley car while in

the performance of his duty in collecting fares from the running board, came in contact with a trolley pole which was set seven inches within the line of the poles, and the conductor was thereby killed. The setting of this pole within the proper safety line was the negligence of a servant of the defendant, but because the result of that negligence was that the place provided for the work of the deceased was thereby rendered unsafe, the master could not escape liability.

In the case before us the master's duty was so to locate the *whole course of this trench* that it should not be unsafe by reason of its method of construction, or its proximity to any object, which might reasonably be expected to create danger in the performance of work otherwise safe. The defendant knew, or ought to have known, of the location of this gas main throughout its whole course, including the point of near approach to this sewer trench, and if its proximity at that point rendered the place of work at that point unsafe, it was the defendant's duty to inform the foreman in charge of the work of such proximity, in order that he might take the necessary steps to protect the workmen from such danger. The material inquiry in this case, therefore, is whether the place where the plaintiff was working when the side of the trench gave way was rendered unsafe by the proximity of this gas main, and that was a question for the jury. It was a secret and hidden risk of danger, if any, unknown both to the plaintiff and the foreman in charge of the work, but to the defendant it was well known, and in such case the master is bound to notify the plaintiff of it. There was evidence adduced upon cross-examination of William C. Brant, who had eighteen years of experience in digging sewer ditches and other sewer work, that a trench eighteen inches from a gas main three feet and a half below the surface is dangerously close, and is not a safe place to work in. There was evidence also from the Superintendent of the Gas Light Company that the outside diameter of this gas main was five and a quarter inches. It is common knowledge that earth will not adhere to a smooth hard surface such as a tile or an iron pipe

as earth adheres to earth, and it is perfectly obvious that in
making such excavations the nearer the approach to a main
or pipe, the greater is the danger of a fall of earth in the
trench when the lateral support of the adjacent main or pipe
is weakened by the removal of earth from the trench. If in
the prosecution of this work it had become necessary to dig
this trench through ground which, by reason of its condition,
a competent and prudent foreman of the work sees, or should
see, should be braced to secure the safety of the workmen,
the defendant could not escape liability by showing that it
had used due care in the selection of a competent foreman.
In *B. and O. R. R.* v. *Baugh,* 149 U. S. 368, quoted from
with approval in *Strickling's Case, supra,* the Supreme Court
said: "Of course, some places of work, and some kinds of
machinery, are more dangerous than others, but that is some-
thing which inheres in the thing itself, which is a matter of
necessity, *and cannot be obviated.* But within such limits,
the master who provides the place, the tools and the machin-
ery, owes a positive duty to his employee in respect thereto.
That positive duty does not go to the extent of a guarantee
of safety, but it does require that reasonable precautions be
taken to ensure safety, and it matters not to the employee
by whom that safety is secured, or the reasonable precautions
taken. He has a right to look to the master for the dis-
charge of that duty, and if the master, instead of discharg-
ing that duty himself, sees fit to have it attended to by oth-
ers, that does not change the measure of obligation to the
employee, or the latter's right to insist that reasonable pre-
caution shall be taken to secure safety in these respects."
Where, as in this case, there was a probable source of danger
unknown to and undiscoverable by either the plaintiff or the
foreman, but known to the defendant, or which must have
been known upon comparing the location of the sewer with
that of the gas main, there is the strongest reason for the
application of the rule above stated. If the foreman had
been furnished with a drawing of the location of this gas
main wherever it was in close proximity with this trench, it

is reasonable to presume that he would have taken such pre-
cautions as he deemed reasonable to secure safety at the place
of this accident, either by shoreing up the side of the trench,
or some other appropriate means, and that he would not
have peremptorily ordered the men to go into the trench, if
he had had reason to believe it was unsafe. The testimony
shows that the line of cleavage, in the whole section of ten
feet, was along the line of the gas main. Manuel says: "The
side of the ditch slid or fell right away from the gas main
so that you could see ten feet of the main exposed." Wm.
C. Brent says: "It slid in clear to the bottom of the gas
main." J. W. Clark says: "It fell right away from the main
in one large lump and left it bare." The superintendent
says: "We braced the bank in several places, but not there."
thus showing that where it could be *seen,* or otherwise *known,*
that bracing was required as a proper precaution, he was
prepared for it, and fortifying the presumption that if he
had known of the proximity of this gas main he would have
braced the trench at that point.

The specific question whether the fall of earth was due to
the proximity of this gas main, and whether it would have
been prevented by shoreing or bracing the trench should
have been submitted to the jury, and the plaintiff's rejected
prayers properly submitted those questions.

The defendant's third prayer was misleading, because it
was calculated and indeed intended to lead the jury to be-
lieve that the whole question was one of the negligence of *a
fellow-servant,* whereas as we have seen, the vital question
is one of the omission of *a positive duty of the master which
cannot be delegated so as to avoid liability for neglect.*

For the reasons stated the judgment must be reversed.

> *Judgment reversed, with costs to the ap-
> pellant above and below, and new trial
> awarded.*