Grafton,
Oct. 5, 1915.

## ISAAC S. WEEKS v. CUSHMAN–RANKIN CO.

In an action for personal injuries brought under the employers' liability act (Laws 1911, c. 163), it is incumbent upon the defendant to prove negligence on the part of the plaintiff.

The right of the plaintiff in an action for personal injuries to have the question of his negligence determined by a jury does not depend upon whether he took every possible precaution to avoid the accident, but whether he exercised care to such an extent that his conduct may be regarded as that of a person of average prudence.

A servant who has been instructed as to the proper method of doing certain work upon a steam-boiler is not chargeable with negligence as matter of law if he suffers injury while performing the same service in a different manner by direction of an experienced millwright in charge of the work, upon whose superior knowledge he relied.

CASE, for negligence, brought under chapter 163, Laws of 1911. Trial by jury and verdict for the plaintiff.   At the close of the plaintiff's evidence the defendants moved for a nonsuit on the ground that the plaintiff was not in the exercise of ordinary care at the time of the accident, and at the close of all the evidence

they moved that a verdict be directed in their favor. Both motions were denied *pro forma*, and the defendants excepted. Other exceptions taken by the defendants were not urged in brief or oral argument. Transferred from the September term, 1914, of the superior court by *Pike*, C. J.

The plaintiff was injured on July 20, 1913, and had then been employed for nine years as fireman of the steam-boiler in the defendants' leather-board mill in Bath. A short time before his injury the defendants removed the manhole and handhole covers from the boiler for the purpose of cleaning it; and during his absence their foreman replaced the covers and turned up the nuts on the crow's-feet holding the covers in place, as far as it was possible to do so without steam pressure in the boiler to warm the gaskets. The plaintiff's evidence tended to prove that the foreman did not properly replace the manhole cover and the gasket or packing which was placed between the edge of the cover and the inside surface of the boiler. For about a week the defendants had been out of the asbestos gaskets which they ordinarily used, and on this occasion the foreman made a gasket from rubber belting. The asbestos gasket was one eighth of an inch thick, while that made from the belting was three eighths of an inch thick. The plaintiff's evidence tended to prove that the rubber gasket was not a proper packing.

After tightening the nuts as much as possible without warming the packing, the foreman called one Drury to take charge of finishing that work after the packing had been warmed. Drury was a millwright of twenty-five years' experience and had been employed to make repairs in the mill for nine years, being called nearly every day for that purpose. The plaintiff had known him for twenty-three years. When the plaintiff came on duty a fire had been started under the boiler, but there was no steam pressure. Drury directed the plaintiff to watch his steam and to tighten the nuts on the handhole cover on top of the boiler and also on the manhole cover in front, when there was about five pounds pressure. While the steam was making Drury went to supper. Upon his return and just as he reached the boiler-house, he heard the safety valve on top of the boiler blow off and saw the plaintiff coming down from the top of the boiler, where he had finished tightening the nut on the handhole cover. Drury then told the plaintiff to tighten the nuts on the manhole cover, which the plaintiff started to do while Drury stood beneath him holding the crow's-foot in

place.   The plaintiff tightened the nuts in just the way and manner that Drury directed him.   The plaintiff had tightened the nut on the left-hand side of the cover, when the packing on that side was blown out and he was burned and scalded by escaping steam and water.

There was a steam-gauge located at the right of the boiler in front and eight or nine feet above the floor, which could be seen by one standing in front of the boiler if he looked to the right.   There was no evidence as to the steam pressure at the time of the accident. The safety valve was set to blow off at 115 pounds and it blew off when Drury returned from supper, but the accident did not happen until thirty minutes later.   In the meantime the smoke chamber doors had been, open, which tends to lessen the steam pressure. The defendants' foreman testified that the plaintiff had assisted him in packing the manhole cover and tightening the nuts on the crow's-feet many times; that he had told the plaintiff not to tighten the nuts when there was more than eight to ten pounds pressure on the boiler, and had also directed him to tighten the nut on one side a little and then the nut on the other side, so as to draw the cover evenly.   The defendants gave Drury authority to call to his assistance any of the regular employees, and in the present instance directed him to see to drawing up the manhole bolts, to have them draw the bolts again, and to use his judgment.

The negligence of which the plaintiff complains is the use of improper packing, the improper placing of the gasket and crow's-feet, and Drury's directions to him to tighten the nuts under the circumstances.   The defendants deny that they were negligent and say that if Drury was at fault they are not responsible for his negligence.   They further claim that the plaintiff was negligent in attempting to screw up the nuts when the pressure of the steam was so high, and in tightening one nut completely, instead of screwing up the nuts a little at a time.

*Fred S. Wright* and *Owen & Veazey* (*Mr. Wright* orally), for the plaintiff.

*Fred C. Cleaveland* and *Edgar W. Smith* (*Mr. Smith* orally), for the defendants.

PLUMMER, J.   The defendants admit that upon the evidence the jury could find that they were negligent.   The only claim

made by the defendants in their brief or in oral argument is that the plaintiff was guilty of contributory negligence and for that reason cannot recover. It is therefore assumed that the other exceptions taken by the defendants at the trial are waived, and that the sole question for consideration is whether the plaintiff was negligent. The action being brought under the Laws of 1911, chapter 163, the burden of proof is upon the defendants to show negligence on the part of the plaintiff.

The test to decide whether the plaintiff was negligent is to inquire if a person of ordinary prudence, placed in the same circumstances that the plaintiff was, would have done what he did. *Davis* v. *Railroad*, 68 N. H. 247, 252; *Smith* v. *Railroad*, 70 N. H. 53, 85; *Boody* v. *Company*, 77 N. H. 208, 214. The plaintiff's right to have the question of his negligence determined by a jury does not depend upon whether he took every precaution he could to prevent the accident, but whether he exercised care to such a degree that his conduct might be regarded as that of a man of average prudence. *Bass* v. *Railway*, 70 N. H. 170.

When the accident occurred the plaintiff had just been tightening up the nut on the crow's-foot on the left-hand side of the manhole cover. He was told to tighten up the nut by Drury, who was present and had charge of the work, and he did it in just the way and manner that Drury directed him to do it. Drury was a millwright of twenty-five years' experience and had done the millwright work for the defendants for nine years, going there nearly every day for that purpose. The plaintiff had known him for twenty-three years, and had worked as fireman for the defendants for nine years, during the same period that Drury had done their millwright work.

The plaintiff unquestionably knew that Drury was a millwright of long experience and that he had done all the millwright work for the defendants during the nine years that the plaintiff had been employed by them as fireman. Whether Drury was a vice-principal or a fellow-workman of the plaintiff, he was a man whose knowledge of the work they were doing was much superior to that of the plaintiff, and he was in charge of the work. The plaintiff, knowing this, had a right to assume that Drury would not tell him to tighten up the nuts on the crow's-feet unless it was reasonably safe to do so, nor direct him to do it in a dangerous manner.

It may be that the plaintiff knew that it was not customary to turn up the nuts on the crow's-feet when there was as much pressure

in the boiler as there was at the time of the accident, and that he had been instructed when and in what manner to screw up the nuts; but upon this occasion he was acting under the direction of a skillful and experienced millwright who had the work in charge, he did exactly as he was told to do, relying upon the superior knowledge of the millwright, and it cannot be said, as a matter of law, that no reasonably prudent man, placed as the plaintiff was, would have done what he did.

The circumstances in this case were such that reasonable and fair-minded men might differ as to what the plaintiff should have done, and therefore a nonsuit or a directed verdict for the defendants was properly refused. *Lyman* v. *Railroad*, 66 N. H. 200, 204. The evidence did not conclusively prove that the plaintiff was negligent, and there was no error in submitting the case to the jury.

*Exceptions overruled.*

All concurred.