Merrimack,
May 2, 1933.

### CHARLES MALTAIS *v.* CONCORD.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiff.

*Murchie, Murchie & Blandin* and *Robert Kelliher* (*Mr. Alexander Murchie* orally), for the defendant.

BRANCH, J.   The plaintiff was injured upon May 12, 1928 through the caving in of a ditch then under construction by the defendant in the course of an extension of its water system.   The ditch was approximately three feet wide at the top, two and one-half feet wide at the bottom, and five and one-half feet deep.   The excavating was done by a gasoline trench digger or tractor shovel, and it was the plaintiff's duty to level off the bottom of the ditch after the trench digger had done its work.   The plaintiff had been employed by the defendant six or seven days before the accident and had been working on the ditch in question for two or three days.   He received no warnings or instructions in regard to the danger that the ditch might cave in, and no safeguards designed to prevent such an occurrence had been installed by the defendant.

The defendant takes the position that a verdict should have been directed in its favor, (1) because there was no evidence of its negligence, (2) because it conclusively appeared that the plaintiff assumed the risk from which his injuries resulted, (3) because the plaintiff was guilty of contributory negligence as a matter of law.

In order to acquire an adequate understanding of the legal rights and obligations of the parties it will be helpful to consider first the claim of the defendant that the plaintiff assumed the risk of being injured by the caving in of the walls of the ditch.

I.   It is contended by the defendant that the plaintiff admitted on the witness stand his knowledge of the danger that the ditch might cave in and that under the rule laid down in *Harlow* v. *Leclair*, 82 N. H. 506, he is bound by this testimony.   The evidence does not sustain this position.   The plaintiff asserted in his direct examination that he did not "know there was any danger from the banks of the

ditch" and in his cross-examination he repeatedly denied any knowledge of the likelihood that the walls of a ditch may cave in. Defendant's counsel finally presented to him, however, the alternative of admitting that he was on the look-out for a possible cave-in or that he took no care for his own safety. While he was fencing with counsel in an effort to avoid this dilemma he twice stated that he looked around to see if there was any danger that the ditch might cave in, and upon each occasion immediately denied that he looked around for that purpose.

If from the plaintiff's statements that he looked around to see whether the ditch was likely to cave in, the conclusion could be drawn that he knew and appreciated the likelihood of such an occurrence and the dangers incident thereto, the rule stated in *Harlow* v. *Leclair, supra* does not compel the drawing of such an inference. That rule applies only when the testimony of a party is "clear and unequivocal." It has no application when his statements are "inconsistent and conflicting." Under the circumstances disclosed in this case it was peculiarly within the province of the jury to determine what was the net effect of his testimony with respect to his knowledge of the danger of a cave-in.

If it were established, however, that the plaintiff was chargeable with knowledge of the fact that ditches sometimes cave in, the conclusion that he assumed all risk of injury from that source would not follow as a matter of law. Against this danger it was obviously and admittedly the duty of the defendant to furnish protection, so far as this could be done, by the exercise of due care. The plaintiff was entitled to "presume that this duty had been performed" (*Thompson* v. *Bartlett,* 71 N. H. 174) unless he had actual or constructive knowledge that there had been a default in performance. In the absence of such knowledge, his assumption of risk would include only those risks of a cave-in which remained after the defendant's duty of protection had been performed. *Pantzar* v. *Company,* 99 N. Y. 368, 376. "A proposition which has so frequently been enunciated by the courts as to have become axiomatic is that, prima facie, a servant does not assume any risks which may be obviated by the exercise of reasonable care on the master's part." 3 Labatt, M. & S., (2d *ed.*) ss. 894, 1178. This principle has been the underlying basis of decision in many cases in this jurisdiction, of which the following may be cited as examples: *Thomas* v. *Railway,* 73 N. H. 1; *Charrier* v. *Railroad,* 75 N. H. 59; *King* v. *Gardiner,* 76 N. H. 442; *Cate* v. *Railroad,* 77 N. H. 70; *Olgiati* v. *Company,* 80 N. H. 399; *Riordan* v. *Company,* 81 N. H. 384.

Two methods of guarding against the danger of a cave-in were in use by the defendant, (1) by sloping the sides of the ditch, and (2) by bracing them. It was, of course, obvious to the plaintiff that neither of these methods had been adopted at the time and place of the accident, but there is nothing in the evidence which necessarily leads to the conclusion that he knew or ought to have known the significance of the facts which indicated the necessity for such protection. The changing character of the soil through which the ditch ran, which is hereafter referred to and which should have spelled danger to a qualified observer, meant nothing to him, because he knew "nothing about soil." The claim that as a matter of law the plaintiff assumed the risk of the defendant's failure to safeguard the walls of the ditch, therefore, appears to be untenable. "It cannot be said that he assumed the risk, when he was ignorant of facts on which perhaps a proper appreciation of the risk depended." *Breen* v. *Field*, 157 Mass. 277, 278; *Kruger* v. *Company*, 84 N. H. 290, 295 and cases cited; 3 Labatt, M. & S., (2d *ed.*) s. 1190. See also cases cited *infra*.

We have not overlooked the cases in other jurisdictions which may be thought to be inconsistent with the conclusion here reached, some of which are collected in the note to *Citrone* v. *Company*, (188 N. Y. 339) in 19 L. R. A. (N. S.) 340, 358, but we do not think they should be followed.

II. There was evidence, however, upon which the defendant might be found chargeable with knowledge of the necessity for additional precautions at the point where the accident occurred. The record discloses that for a considerable distance before reaching this point the ditch had run through "hard marly sand" which was "kind of a clayey substance" but that the soil "started to change right where the accident happened" and became more sandy. It was described by the defendant's superintendent as "sand, mixed with silt, not so much silt as there had been . . . It was all sand, all the way through." Another witness described it as "sand, fine sand and some small gravel." The ditch had been dug about 30 or 40 feet through this new material when the accident happened.

The plaintiff's expert who inspected the ditch after the accident, testified that in soil of this kind there was "a great possibility" that the walls would cave in, and the defendant's superintendent testified that when work was resumed on the following Monday morning he did not like the looks of the sand and "would not put men in there without either cutting it down or bracing it." From this testimony the conclusion might properly be drawn that by reason of the change

in the character of the soil through which the ditch ran, some physical precautions against a cave-in should have been taken by the defendant and that its failure to adopt safety measures of some kind was negligent. *Breen* v. *Field,* 157 Mass. 277; *Bartolomeo* v. *McKnight,* 178 Mass. 242; *Thompson* v. *Railway,* 14 Fed. Rep. 564; *Manuel* v. *Cumberland,* 111 Md. 196; *VanSteenburgh* v. *Thornton,* 58 N. J. L. 160; *Norfolk &c. R. Co.* v. *Ward,* 90 Va. 687; *McCoy* v. *Company,* 104 Minn. 234; *Smith* v. *Railways,* 237 Pa. St. 280.

The defendant argues that it discharged its full duty in this particular by placing the work in charge of an experienced workman with authority to install braces or make the ditch wider at the top if he felt there was any danger, and in support of this position, relies upon the case of *McLaine* v. *Company,* 71 N. H. 294.

The workman in question was not a foreman, and the defendant's superintendent testified that he would "not have him for foreman for the whole job," although he considered him competent for this work. The plaintiff contends that the jury might properly have found that this man was incompetent to exercise the judgment required of one who was entrusted with such responsibility, but it is unnecessary for us to consider the evidence upon this point. Even if the servant in charge of the work were found to be competent, the defendant would not be relieved of responsibility for his negligence.

The case of *McLaine* v. *Company* upon which the defendant bases its argument is not in point. In that case the danger was nothing more than an incident of the work which servants of the defendant were employed to perform. It was inherent in the conduct of the plaintiff's fellow-servants and in that alone. It arose solely from the manner in which they did their work. In the case at bar the danger was not inherent in the conduct of the plaintiff's fellow-servants, but arose from the nature of the material in which and with which he and they were required to work. In the *McLaine* case "there was no secret danger unknown to the plaintiff." (*Ib.* 295) Here the added danger of a cave-in due to the change in the character of the soil through which the ditch was passing was a secret danger unknown to the plaintiff, and under such circumstances, as the defendant concedes in its brief, the principle of the *McLaine* case offers no obstacle to recovery. The present case is analogous rather to *Blaisdell* v. *Company,* 75 N. H. 497, where the plaintiff in moving material which had been loosened by blasting encountered an unexploded charge of dynamite whose presence was unsuspected by him. Here the plaintiff in doing his work encountered material of dangerous in-

stability, the presence of which was unknown to him. It was the non-delegable duty of the defendant to safeguard the plaintiff against this danger and hence it is legally chargeable with the knowledge which its servant should have had and with the consequences of his failure to take such protective action as due care demanded under the circumstances. *VanSteenburgh* v. *Thornton*, 58 N. J. L. 160; *Elledge* v. *Railway*, 100 Cal. 282; *Jaques* v. *Company*, 66 N. H. 482, 484; *Story* v. *Railroad*, 70 N. H. 364, 368; *Charrier* v. *Railroad*, 75 N. H. 59, 63.

The evidence also lends support to another theory upon which a finding of negligence might be predicated. The defendant's superintendent testified that he visited the ditch about an hour before the accident happened, and then noticed that the character of the material in which it was being excavated "was changing some," that he took "particular note of the sand that was coming out of the ditch," and told the workman in charge "to look out for everything, keep his eye peeled, watch out for things," that he did this because the foreman of the job was not there, and he wanted to make sure that the workman in charge was following his instructions. This workman testified that the superintendent told him to "look out nobody got hurt."

From this testimony it might be found that an officer of the defendant whose authority was superior to that of any person engaged in the work undertook to give directions in regard to the manner in which operations should be carried on; that he had actual knowledge of the changing conditions under which the men were working and was apprehensive of the resulting increase in danger, but that he failed to take reasonable precautions to meet the increased danger of a cave-in which were or should have been obvious to him.

III. In view of what has already been said the claim that the plaintiff was as a matter of law guilty of contributory negligence may be shortly disposed of. Defendant's argument is based upon the assertion that the "plaintiff was aware there was danger of the bank caving in," and the contention is that "If he had watched it he could have seen the break developing." As before stated, the extent of the plaintiff's knowledge was for the jury to determine, and the evidence indicated his complete ignorance of the increase in danger due to the change in the soil at the point of accident. How far due care on his part required that he keep watch for a possible cave-in, obviously depended upon the extent to which he realized the danger. Furthermore, the evidence does not support the assumption that informed watchfulness on his part would surely have enabled him to escape injury. The only testimony on the point is that of the defendant's

superintendent who testified as follows: "Q. If it did cave in, it might be without any warning? A. It might and might not. Q. That is, a man working in the ditch might be able to see the break as it developed in season to avoid it and he might not? A. A man in the ditch generally can see it. Q. That isn't always so? A. Most always if he is watching it." Under such circumstances it seems plain that the question of the plaintiff's due care cannot be decided adversely to him as a matter of law.

*Judgment on the verdict.*

All concurred.