Hillsborough, }
May 7, 1935. }

ALPHONSE PERREAULT *v.* ALLEN OIL CO.

*Arthur B. Hayden* and *Osgood & Osgood* (*Mr. Anson G. Osgood* orally), for the plaintiff.

*Timothy F. O'Connor* and *Myer Saidel* (*Mr. Saidel* orally), for the defendant.

MARBLE, J. The court found on evidence informally presented that the facts did not bring the case within the provisions of the workmen's compensation act. The evidence was sufficient to warrant this conclusion. Since the defendant participated in the proceedings and did not object to the procedure adopted, it cannot now complain of the method by which the facts were proved. *Vidal* v. *Errol*, 86 N. H. 585; *Morin* v. *Insurance Co.*, 85 N. H. 471, 472, and cases cited.

This does not dispose of the matter, however, since, even though the statute did not apply, the parties had a right to settle their differences on the basis of the benefits conferred by the act. The validity of the release was properly determinable in the trial of the action at law (*Genest* v. *Company*, 75 N. H. 365, 367), and by electing not to try that issue the defendant waived the alleged defence.

The accident occurred on June 21, 1930, at the defendant's filling station in Manchester. The plaintiff was helping to hang a sign, fifteen feet long and three feet wide. One end of the sign was to be attached to the defendant's garage, the other to a post. The post was set in a hole 32 inches deep and held in place by loose stones. It was supported by two braces made of boards an inch thick and three inches wide nailed to a picket fence. The plaintiff dug the post hole and filled it in under the direction of one Giroux, who was the president, treasurer, and manager of the defendant company.

When the post had been erected, one end of the sign was raised and placed on a block nailed to the side of the garage. Ladders were then placed on opposite sides of the post, and two workmen, taking hold of the sign, gradually raised it as they mounted the ladders. The plaintiff and Giroux, standing on the ground, helped in the lifting. After the sign had been raised to a point higher than their

heads, each took a stick and placed it underneath the sign to steady it and to guide it. The plaintiff acted under express orders from Giroux, in whom he "had confidence."

In the meantime the post against which the ladders had been placed began to tip. This caused one of the workmen to release his hold, and the sign fell on the plaintiff. The workman described the accident as follows: "I took the sign, went up the ladder. When we got pretty near to the top, to brace myself I took hold of the post in order to get a better lift on the sign. ... The ladder slipped a little and the post gave way ... when I thought the post was going, I dropped everything to save myself. ... I let go of the sign and I jumped and landed on the picket fence."

The plaintiff's evidence tended to prove that the method of erecting the sign was not a reasonably safe one in view of the unstable installation of the post; that the post hole was much too shallow and that it should have been filled with earth as well as rocks and then tamped down; and further, that the braces were entirely inadequate both in structure and location to withstand the uneven weight aplied to the top of the post by the ladders and men. "There was evidence from which it could be found that the accident would not have happened but for the defendant's failure in one or more of these particulars. Whether such failure was a proximate cause of the plaintiff's injury was a question of fact for the jury." *Dervin* v. *Company*, 81 N. H. 108, 111, 112, and cases cited.

It could also be found that the plaintiff did not assume the risk. His occupation was that of a helper "on any kind of odd jobs and in the woods." He thought the post hole was deep enough. After digging it he "went to Giroux and showed him the hole" and he "said it was all right." When the post had been set and braced, the plaintiff believed it was secure, even though he knew "that men were going to lean up against it with ladders." Since he was not a carpenter and "never did any carpenter work," he was not chargeable, as a matter of law, with knowledge that the braces were inadequate. He was entitled to presume that the defendant had furnished protection against a danger likely to occur (*Maltais* v. *Concord*, 86 N. H. 211, 213) and that the work he was asked to perform was reasonably safe (*Camire* v. *Company*, 79 N. H. 531, 533).

The fact that the plaintiff recognized the possibility that the sign might be dropped accidentally did not mean that he was also aware that it might be dropped because the post was improperly supported, and "unless a servant's actual or constructive knowledge of those

factors which enter into his injury is substantially complete, it cannot be said that he assumed the risk." *Kruger* v. *Company*, 84 N. H. 290, 295. See also *Vidal* v. *Errol*, 86 N. H. 1, 7; *Goldstein* v. *Corporation*, 86 N. H. 402, 403.

The suggestion that "Perreault's own testimony conclusively convicts him of failure to use reasonable care" is entirely without merit. The evidence warranted a finding that the plaintiff did precisely what he was told to do, relying on Giroux's superior knowledge and ignorant of the hazard occasioned by the unstable post. The issue of contributory negligence was for the jury. *Weeks* v. *Company*, 78 N. H. 26, 30; *Roussel* v. *Company*, 80 N. H. 254, 256; *Nichols* v. *Moulton*, 82 N. H. 110, 111; *Kruger* v. *Company*, 84 N. H. 290, 298; *Maltais* v. *Concord*, 86 N. H. 211, 216. It follows that the court did not err in denying the motions for a nonsuit and directed verdict.

A construction foreman, called by the plaintiff as an expert witness, examined the post in question at the time of the trial and testified to the size of the nail holes at the point where the braces had evidently been affixed. The defendant excepted to the admission of this evidence unless it could be proved "that these holes were made at the time" of the accident. The exception is unavailing, since there was abundant evidence from which this fact could be inferred. There were no braces on the post when the witness examined it; it was the same post which the plaintiff had helped to set; the holes were exactly where the plaintiff's testimony indicated the braces had been fastened, and there were no other nail holes in the post.

The opinions expressed by the witness were admissible though bearing on a main issue. *Higgins* v. *Carroll*, 86 N. H. 312, 315; *Goldstein* v. *Corporation*, 86 N. H. 402, 404; *Christie* v. *Company*, ante, 236.

It was not error to permit the expert to testify that braces three inches wide and one inch thick were not ordinarily used "except as a stay to hold a post temporarily" while other work such as filling in the hole or putting on permanent braces is being done. *Saucier* v. *Spinning Mills*, 72 N. H. 292, 295. See also *Sweeney* v. *Winebaum*, 84 N. H. 217, 218.

Eight of the defendant's requests for instructions were denied subject to exception. Three of the requests (treated collectively in the defendant's brief) comprise statements to the effect that the plaintiff was not entitled to warning if his knowledge of the danger equalled or excelled that of "his employer, Giroux," and that the defendant was under no duty to warn him of obvious dangers, or risks, which were discernible, or to tell him "how to stand in relation to the sign."

The evidence fully warranted a finding that due care in the performance of the defendant's non-delegable obligations (see *Dervin* v. *Company*, 81 N. H. 108, 112, 113) demanded a warning as to dangers of which Giroux as well as the plaintiff was ignorant. *Harvey* v. *Welch*, 86 N. H. 72; *Musgrave* v. *Company*, 86 N. H. 375, 376, 377.

The word "discern" implies "delicate or fine discrimination or perception." Hence, to charge the plaintiff with discernible risks would be to impose upon him in effect "the master's duty of inspection." *Kruger* v. *Company*, 84 N. H. 290, 297. The jury were instructed that a servant "assumes the ordinary risks which attend the work which the master requires of him" and that "ordinary risks mean such risks as the average person would observe and appreciate." This was a clear and concise statement of the rule, to which no specific exception was taken.

As suggested in the plaintiff's brief, if the defendant saw fit to erect the post in an unsafe manner and to use an unsafe method of raising the sign, ordinary care might well require that the plaintiff be told where to stand. *Willis* v. *Company*, 75 N. H. 453, 457; *Watkins* v. *Railroad*, 83 N. H. 10, 12.

The defendant also requested an instruction to the effect that "there being no complaint . . . of unsuitable appliances" (an assumption contrary to the fact), the only question for the jury to consider was whether or not the defendant "should have warned or instructed Perreault or should have used a different method" of hanging the sign. Such an instruction would have withdrawn from the jury the issue of the defendant's alleged negligent installation of the post.

Another request called for an instruction that no particular method need be employed "in erecting a particular sign," but that all the law requires is that the particular method used be a reasonably safe one. This request was given in substance. The court's refusal to employ the phraseology suggested by counsel was not error. *Salvas* v. *Cantin*, 85 N. H. 489, 493, 494.

Since Giroux represented the defendant corporation in the performance of its non-delegable duties, the court properly denied the defendant's request for an instruction that the plaintiff and the other workmen, including Giroux, "were all fellow servants." *Jaques* v. *Company*, 66 N. H. 482, 484; *Maltais* v. *Concord*, 86 N. H. 211, 216.

The defendant further requested the court to charge that "unless Giroux knew or could reasonably anticipate" that the workman who dropped the sign "was going to let go," he was under no duty to warn the plaintiff as to that danger. This request placed undue stress on

the immediate cause of the accident and ignored the plaintiff's contention that the tipping of the post was the real cause of his injury. See *Wemyss* v. *Company*, 86 N. H. 587, 592, 593. The determinative inquiry was not whether Giroux ought to have anticipated that the accident would happen precisely as it did, but whether the chance that the sign might fall because of the insecure post was so great that the ordinary employer in the defendant's position would have recognized the danger and warned the plaintiff concerning it. *Tullgren* v. *Company*, 82 N. H. 268, 276. The instructions on the subject were sufficiently favorable to the defendant.

The concluding request was for an instruction that if the plaintiff by following the advice of certain physicians would have been cured, he could not recover "for any pain, suffering or disability . . . since the time such cure would have been effected." The request left wholly out of consideration the rule (applicable here on the evidence) that an injured plaintiff is bound to follow a prescribed medical treatment only when due care requires it. 1 Sedgwick, Damages (9th ed.), *p.* 418; Annotation, 11 A. L. R. 230. See also *Neault* v. *Company*, 86 N. H. 231, 233.

The defendant excepted to the refusal of the court to declare a mistrial because a physician on being asked if he could state the amount of his bill, replied: "Of course this being a compensation case, no, I can't." It is suggested that this answer "inferentially interjected" into the case "the insurance question which was obviously prejudicial."

It does not appear that the witness was employed by an insurance company. On the contrary, he testified that he had rendered a bill to the plaintiff for his services to February 3, 1931, and the bill was introduced as an exhibit. The word "compensation" carried no implication of insurance. It means recompense, and the presiding justice used the word several times in the course of his charge as synonymous with damages. The defendant did not ask the witness to explain his remark or request an instruction that it be disregarded. The court has found that the statement did not harm the defendant, and from an examination of the record it is clear that no other conclusion could properly have been reached.

*Judgment on the verdict.*

All concurred.