Hillsborough,
Oct. 1, 1940. } No. 3181.

HONORE DUBUC *v.* AMOSKEAG INDUSTRIES, INC.

174

*McLane, Davis & Carleton* (*Mr. Carleton* orally), for the plaintiff.

*Alvin A. Lucier*, for the defendant.

MARBLE, J.   According to the uncontroverted evidence there was a safe method of performing the work in question by the insertion of a supporting beam, or "header," after the wall had been cut halfway through.   The following paragraph is taken from the testimony of the foreman, under whom Paquette was working as gang boss:

"Q. Was this job done in a safe manner or unsafe manner?   A. Unsafe manner . . . .   Q. Done in the way it was done, you would expect the wall would fall down, would you not?   A. Yes, sir. . . .   Q. And Paquette was in complete charge of the work and of how the work was to be done?   A. Yes; while I was away.   Q. And if he had done it in the proper manner, there would be no opportunity for the wall to fall, would there?   A. No, sir . . . .   Q. What was the standard, usual way to do the work?   A. The usual way, on heavy work like that, was to cut halfway through to give ample space for your header, and put that header on one side, and doing your cutting on the opposite side.   Q. Had you previously given those orders, those general orders to the men under you, for doing that work? A. I don't remember if I had."

The defendant's general foreman testified to the same effect.   The defendant had never had occasion to cut through so thick a wall before.   The situation was "quite unusual," and special precautions were required.

The plaintiff "was a truck driver most of the time."   He had had no experience whatever in the construction or demolition of brickwork, and acted under the direct orders of his superior.   He did not know "that unless something was put in there to hold up the bricks, the bricks would come down."

Paquette testified that it was his duty to see that the work was done in a safe manner and that he assured Hokanson and the plaintiff "just a minute or two before the wall collapsed that it was safe for them to stay there and work."

This evidence clearly warranted a finding that the defendant did not furnish the plaintiff reasonable protection against a danger likely to occur and that the plaintiff neither assumed the risk nor was

guilty of contributory fault. *Camire* v. *Company*, 79 N. H. 531; *Carpenter* v. *Company*, 80 N. H. 77, 79; *Hill* v. *Company*, 81 N. H. 190, 192; *Maltais* v. *Concord*, 86 N. H. 211, 213, 214; *Perreault* v. *Company*, 87 N. H. 306, 309; *Pickett* v. *Company*, 89 N. H. 244, 247; *Tremblay* v. *Company*, *ante*, 24.

Nevertheless, the defendant contends that the action cannot be maintained, since by virtue of section 3 of chapter 163 of the Laws of 1911 (P. L., *c.* 178, *s.* 10) the only right which the plaintiff had against his employer was to file a petition for compensation or to sue for injuries resulting from the defendant's wilful failure "to comply with any statute, or with any order made under authority of law."

Section 4 of chapter 163 of the Laws of 1911 (P. L., *c.* 178, *s.* 11) provides that "The right of action for damages caused by any such injury, at common law or under any statute, [in force on January one, nineteen hundred and eleven] shall not be affected by this chapter." The contention that this section refers only to injuries sustained before the passage of chapter 163 cannot be seriously entertained. It was held in numerous cases antedating the reënactment of the employers' liability and workmen's compensation act that an injured workman whose employer has filed with the commissioner of labor his acceptance of the provisions of the act is not obliged to accept compensation but may maintain an action at common law for the injury sustained. *Watts* v. *Company*, 79 N. H. 299; *Bjork* v. *Company*, 79 N. H. 402, 404; *Sullivan &c. Co.* v. *Stowell*, 80 N. H. 158, 160; *Moore* v. *Hoyt*, 80 N. H. 168; *Olgiati* v. *Company*, 80 N. H. 399, 402; *Paige* v. *Company*, 80 N. H. 439, 441; *Hodges* v. *Company*, 81 N. H. 101; *Dervin* v. *Company*, 81 N. H. 108, 110; *Hill* v. *Company*, 81 N. H. 190; *Zajac* v. *Company*, 81 N. H. 257, 261; *Riordan* v. *Company*, 81 N. H. 384, 385.

In accordance with these decisions it has been consistently held since the general revision of the laws effective January 1, 1926, that "the innovation of workmen's compensation and employers' liability legislation in this state was not a destruction of the common law of master and servant." *Davis* v. *Company*, 88 N. H. 204, 211. See, also, *Gordon* v. *Company*, 83 N. H. 221, 222. The language of section 4 clearly warrants this conclusion but even if its meaning were obscure, the reënactment of the section without material change would constitute a legislative adoption of "its prior judicial interpretation." *Lisbon &c. District* v. *Lisbon*, 85 N. H. 173, 175; *Bilodeau* v. *Insurance Co.*, 84 N. H. 405, 407, and cases cited. The motions for a nonsuit and directed verdict were correctly denied.

Defendant's counsel asked the witness Hokanson on cross-examination if, during the progress of the work, there was some question in his mind "as to whether the wall was going to stay up." In the absence of evidence that the plaintiff's knowledge regarding the strength of brick construction was substantially equal to that of Hokanson or that Hokanson had communicated to the plaintiff his doubt concerning the stability of the wall, an affirmative answer to the question could have had no logical tendency to prove that the plaintiff had experienced the same doubt or was aware of his peril. This evidence was properly excluded. *Palmer* v. *Edgerly*, 87 N. H. 391, 394.

The defendant relies upon its exception to the denial of the following requests for instructions:

"If you find that Mr. Paquette acted as a reasonably prudent man would have acted under like circumstances then your verdict must be for the defendant. If you find that the particular job which was being done at the time the plaintiff was injured was unusual and that Paquette was merely mistaken in his judgment as to how best to do the work that is not negligence and the plaintiff is not entitled to recover. . . .

"Having made provisions for the warning by intrusting the duty to a competent person the master is not liable for the negligence of the person intrusted with that duty and so in this case if you find that Paquette was a competent person and that he failed to warn the plaintiff about the dangers of the work it is his negligence and not that of the defendant and your verdict must be for the defendant. . . .

"It was the standard custom to insert headers before walls were cut all the way through and Paquette was aware of that fact; his failure to follow the usual course in doing the work is his negligence and not that of the employer and if you find that he departed from the usual custom and thus caused injury of the plaintiff it is his conduct that is responsible and not that of the defendant and your verdict should, therefore, be for the defendant."

It was the defendant's duty to furnish reasonable protection to the plaintiff against the dangers of an unusual situation which it knew or ought to have known and which the plaintiff neither knew nor was in fault for not knowing (*Bouthet* v. *Company*, 75 N. H. 581, 583), and this duty the defendant could not discharge by entrusting its performance to Paquette, however competent he might be. The requests were correctly denied. *Moore* v. *Company*, 89 N. H. 332,

336, and cases cited; *Perreault* v. *Company*, 87 N. H. 306, 311; *Maltais* v. *Concord*, 86 N. H. 211, 215; *Dziedzic* v. *Company*, 81 N. H. 516, 518, and cases cited.

The remaining exceptions are understood to be waived.

*Judgment on the verdict.*

All concurred.