Hillsborough,   ⎱
Dec. 3, 1940.  ⎰ No. 3190.

## ALDEA BOUCHER *v.* NAMASKET CO.

*Chretien & Craig (Mr. Craig* orally), for the plaintiff.

*Alvin A. Lucier* (by brief and orally), for the defendant.

MARBLE, J. An experienced machinist, familiar with all kinds of textile machinery, examined the belt on which the plaintiff was injured. He testified in part as follows:

"Q. Is there anything about a belt with clipper fasteners that

would cause it to grab garments and cause it to pull them toward the belt. A. Yes. . . . If the fastener was inserted on one side of the belt more than the other, if not placed in the center and . . . equally divided on each end. Q. What would happen? A. It would leave an opening of greater space on one side of the belt . . . where something might catch in it. Q. Suppose the fasteners are placed exactly in the middle? A. The tendency wouldn't be so great for anything like that to happen. Q. Can the fasteners be placed exactly on the edges of the belt? A. Not exactly; not within an eighth of an inch, about an eighth of an inch. Q. Tell us . . . if there would be anything about such a belt that would grab garments? A. There could be. The opening would leave a chance . . . to take hold of something. Q. Can you see any other explanation . . . to explain how the sweater worn by this girl could have been torn off of her body? . . . A. I don't see any other way. . . .

"Q. In your experience dealing with machinery and with belts, what do you say as to whether or not belts driving machinery, such as the one you observed when you visited the factory, should be guarded? . . . A. They should be guarded. . . . Q. Why should they be guarded? A. As a factor of safety. Q. Would it have been possible to place a guard around the belt and pulley such as the one you observed there at the factory when you went to visit the scene of the accident? A. Very easily. . . .

"Q. Will you be good enough to tell us what you observed about the clipper fastening on the belt you saw at the factory? . . . A. The clipper fastener on the four-inch belt I saw was set a little mite one-sided, which left an opening on the right-hand side of the belt as you face it. The opening was nine-sixteenths inches in width and a quarter of an inch the other way. Q. Whether or not that would have any effect upon the belt grabbing or catching onto some clothes? A. It would; it was a very sharp corner on the belt."

On the foregoing evidence, the jury might properly find that the defendant was negligent (*Bridges* v. *Company*, 85 N. H. 220, 225, and cases cited) and that its negligence caused the plaintiff's injury (*Emery* v. *Company*, 89 N. H. 165, 167, and cases cited).

It does not conclusively appear that the plaintiff was guilty of contributory negligence. P. L., c. 328, s. 13. It was one of the defendant's rules that yarn should not be left on the floor. She knew that she had to be careful. She thought if she reached in with her hand alone she would get too close to the belt and so used the empty bobbin; she tried to keep as far away from the belt as she could.

She stated that she was careful. *Goldstein* v. *Corporation*, 86 N. H. 402, 403, 404.

It could be found that the plaintiff did not assume the risk. She knew that if she got too close to the belt she might get burned or scratched, but she did not appreciate the more serious danger of getting her clothing caught on the sharp corner. The following excerpts are taken from her testimony:

"Q. You have already told us you noticed the clipper clasps on one part of the belt where the two ends of the belt were brought together. Did you know of any danger connected with those? A. I didn't know. Q. You didn't know? A. No. Q. Did anybody ever tell you there was any danger connected with those clipper clasps? A. No. . . .

"Q. Before the accident did you ever notice a little space on the right side of the belt as you face the belt, did you ever notice a little space there between the two ends of the belt where there was no clasp? A. No. . . . Q. Were you ever told by anyone working for the Namasket Company, an official or any other, not to approach the belt? A. No. Q. Did it ever occur to you what might happen if you came in contact with that belt before the accident—before this accident, did it ever occur to you what might happen to you? . . . A. The only thing I could think if I got too close to the belt I could get burned or get scratched, but I never thought I could get hurt like I did."

The mere fact that the plaintiff knew it was dangerous to place her hand near the belt is insufficient to charge her, as a matter of law, with appreciation of the peril which she encountered. *Tremblay* v. *Company*, ante, 24. She did not know that there was "a very sharp corner on the belt" which might catch her clothing, and it is the rule in this jurisdiction that "unless a servant's actual or constructive knowledge of those factors which enter into his injury is substantially complete," he cannot be held to have assumed the risk. *Kruger* v. *Company*, 84 N. H. 290, 295; *Maltais* v. *Concord*, 86 N. H. 211, 214; *Perreault* v. *Company*, 87 N. H. 306, 309, 310; *Pickett* v. *Company*, 89 N. H. 244, 247. See, also *Vidal* v. *Errol*, 86 N. H. 1, 7; *Goldstein* v. *Corporation*, 86 N. H. 402, 403.

The defendant's exceptions are overruled.

*Judgment on the verdict.*

ALLEN, C. J., and PAGE, J., dissented: the others concurred.